# Wytheville.

## N. &. W. R. R. Co. v. Stone's Adm'r.

### July 23d, 1891.

1. RAILROAD CROSSINGS—*Contributory negligence.*—When traveler approaches a crossing, he must vigilantly use his eyes and ears, and look in every direction to .make sure of avoiding collision with some passing train. Failure to employ such vigilance is contributory negligence.

2. IDEM—*Case at bar.*—Boy of thirteen years, acquainted with a railroad crossing at which, by reason of a deep cut, a train was not visible until one was on the track, though just informed at the post-office that the train was late and might reach the crossing about when he did, yet drives upon the crossing with his ears wrapped up in a comfort on account of the cold;

HELD:
> Guilty of such contributory negligence as barred the recovery of damages for his death, though the train was running more rapidly than usual and no signal was given of its approach.

Error to judgment of circuit court of Smyth county, rendered December 11th, 1890, in an action of trespass on the case wherein A. F. Stone administrator of Samuel Hall Stone, deceased, is plaintiff, and the Norfolk & Western Railroad Company is defendant.

The action is for damages for the alleged negligent killing of the plaintiff's son and intestate, a boy thirteen or fourteen years old, by the defendant's passenger train, on the 9th day of March, 1889, at or near to the Mount Carmel Mills in Smyth county, Virginia, when the said intestate was driving a

one-horse wagon across the track of the said defendant's rail-road at a highway crossing.

The jury rendered a verdict for $8,000 damages, whereupon the defendant moved the court to set aside the verdict and grant to it a new trial on the grounds : that the testimony failed to prove negligence on the part of the defendant company, its agents and employees, to warrant the finding of the jury; that the testimony plainly shows such contributory negligence on the part of the plaintiff's intestate as to prevent a recovery; and that the amount of the verdict is excessive. But the court overruled the defendant's said motion, and entered judgment upon the said verdict, that the plaintiff recover against the defendant $8,000, with legal interest thereon from the 11th day of December, 1890, till paid, and the costs. The case is here upon writ of error awarded to the said judgment.

*William H. Bolling,* for plaintiff in error.

*Sheffey & Richardson,* for defendant in error.

FAUNTLEROY, J. (after stating the case), delivered the opinion of the court.

The record presenting only a certificate of the evidence, and not the facts, we must consider the case here under the statutory rule fixed by the Code 1887, § 3484, as upon a demurrer to evidence.

But, so reviewing the case presented by the record, we are of opinion that the plaintiff's testimony, considered with that part of the defendant's, which is not contradictory nor inconsistent with that of the. plaintiff, shows a clear case of contributory negligence on the part of the plaintiff's intestate, without which the accident by which he met his death would not have occurred. The facts of this case, which will be

presently detailed, bring it directly and squarely within the reasoning and the rule laid down by this court in the case of *Andrews* v. *S. W. Va. Imp't Company*, 86 Va. (11 Hansbrough), 279 ; and in the case of *Mark's Administrator* v. *Petersburg R. R. Co.*, *ante*, p. 1. In this last-mentioned case the following propositions of law are settled : " A railroad company, undoubtedly, is bound to exercise care to avoid a collision where it crosses a public highway ; and the greater the danger, the greater is the vigilance required; the rights and duties, however, of the company and of the public are reciprocal; and hence no greater degree of care is required of the one than of the other. Both the company and the traveler on the highway are charged with the mutual duty of keeping a careful lookout for danger. The traveler on the highway, when he approaches a crossing, must assume that there is danger, and act accordingly. The existence of the track is a warning of danger. He must, therefore, be vigilant; he must look and listen; he has no right to close his eyes and ears to the danger he is liable to incur; and if he does, and an injury results, he must bear the consequences of his folly or carelessness. In such a case he is the author of his own misfortune." In the case of *N. Y. & P. & N. R. Co.* v. *Kellam's Administrator*, 83 Va. (8 Hansbrough), 851, it was held " that a traveler on an intersecting highway, before crossing the railroad, must use his senses of hearing and sight; that he must look in every direction that the rails run, to make sure the crossing is safe; and that his failure to do so will, as a general rule, be deemed culpable negligence." See *R. & D. R. R. Co.* v. *Anderson*, 31 Gratt. 812 ; *Dunn* v. *S. & R. R. R. Co.*, 78 Va. (3 Hansbrough), 645.

In the case of ―― *Railroad* v. *Houston*, 95 U. S. 697, it is said by the Supreme Court of the United States that " the negligence of the company's employees, in failing to give proper signals, was no excuse for negligence on the part of the deceased. She was bound to listen and look before attempt-

ing to cross the railroad track, in order to avoid an approaching train, and not to walk carelessly into the place of possible danger. Had she used her senses, she could not have failed both to hear and see the train which was coming. If she omitted to use them, and walked thoughtlessly upon the track, she was guilty of culpable negligence, and so far contributed to her injuries as to deprive her of any right to complain of others. If, using them, she saw the train coming, and yet undertook to cross the track, instead of waiting for the train to pass, and was injured, the consequence of her mistake and temerity cannot be cast upon the defendant."

Now, the facts presented by the record, to which the foregoing explicit and well-settled law of contributory negligence is to be applied as the rule of decision in this case, are as follow: On the 9th day of March, 1889, a passenger and mail train, upon the Norfolk & Western railroad, which was five hours and thirty minutes behind time, and which was running at a speed of forty or forty-five miles an hour, going west, collided with a wagon and horse, driven by the plaintiff's son and intestate, Samuel Hall Stone, a boy between thirteen and fourteen years of age, at and upon a public crossing over the said railroad track, called "Stone's Crossing," at Mount Carmel Mills, a short distance (two and a half miles) east of Marion, in Smyth county, Va., by which collision the said Samuel Hall Stone was killed, having his head torn from his body. The horse was killed, and the wagon smashed to pieces. The plaintiff alleges, and by numerous witnesses who swear that they lived near by the said crossing, and did not hear, proves that no signal whistle was blown by the said train as it passed the "Whistling Post," 440 yards east of the said "Stone's Crossing," which omission or neglect, together with the high rate of speed at which the train was going, he contends, was the proximate cause of the accident and death of the plaintiff's son and intestate. Under the rule, which excludes from consideration here all the testimony of the

appellant upon this point, it boots nothing that the numerous
and respectable and unimpeached witnesses of the appellant
swear, positively, that the usual, appointed, and proper signal
was given, by blowing the whistle, for the approach of the
train to "Stone's Crossing." Yet, though this must, under
the rule, be held to be proved neglect of duty by the defendant
company, the plaintiff's own witnesses prove that they did hear
the whistle blown by the train at "Scott's Crossing," which
is less than a mile east from "Stone's Crossing." This cross-
ing is described by the plaintiff's witnesses as being "right
in front of the mill; it was a dangerous crossing; heavy
grade from the McAdam road to the railroad. A man in a
wagon cannot see the train east or west until he gets on the
track. A man going in a wagon down to the crossing to the
mill cannot see a train coming either (way) until you get to
the track. The road leading down to the crossing slopes a
portion of the way. The bluff, ten feet high, does not con-
tinue all the way down to the railroad track. The road lead-
ing down from the McAdam road to the railroad crossing is
down grade. The grade measures about 108 feet from the rail-
road to the top of the grade. It is about a sixteen or eighteen
feet fall in that distance. That is the road that little boy was
driving down. It is a steep incline there. A steep descent
for 112 feet to the railroad of seventeen and a half feet fall.
Just before you get to the crossing the descent is not so steep.
It is a little level just before you get on the railroad."

This crossing was in a few yards of the mill owned and occu-
pied by the father of Samuel Hall Stone, and about the same
distance from their dwelling. He was perfectly familiar with
it; and had been for a year previous to the accident syste-
matically employed by his father in driving his delivery wagon
and thoroughly-trained horse across this crossing, and up and
down this steep cut, back and forth, with mill supplies for his
customers in Marion and at the asylum, making frequently as
many as four trips or eight passages a day. And on the fatal

9th day of March, 1889, he had driven over it to Marion and back to the mill, and gone again to Marion, where, at the post-office, when he inquired for his mail, as his custom was, he was informed by the postmaster that the west-bound mail train was behind time, and would be passing in a little while, and would most probably pass " Stone's Crossing " at the mill just as he would reach there with his wagon on his return home, and that he should be on his guard against the immi-nency of the danger of being hurt by it.   The day was very cold and windy, and he was wrapped in his overcoat and a comfort around his neck and over his head and ears, with his cap drawn down.   Thus equipped, he drove his horse and wagon down the steep cut in the bluff or bank, on to the cross-ing, where he was struck and instantly killed by the train which he had been expressly and officially informed by the postmaster at Marion he should expect and look out for at that crossing.   If he could not hear the rumbling thunder of the on-rushing train, it may have been because of the wrapping over his ears; and if (as the plaintiff's own witnesses prove) he could not see the train until he emerged from the defile of the road on to the track itself, it is made equally manifest and certain, by the same testimony, that the engineer of the train could not, by any possibility, see him until he so emerged from the cut, and attempted to pass the crossing just under the fly-ing train.   They, by their own testimony, prove the engineer of the train, Pile (who is proved to be a skilled, expert, and first-class engineer), to have expressed, on the spot and moment of the disaster, his deep regret and utter inability to have pre-vented or avoided the poor boy's death, declaring that he did not see the situation until so close upon the boy and wagon and horse as to be powerless to save them.   The boy was of great activity, industry, intelligence, and practiced skill, and was perfectly familiar with the danger of the locality; and melan-choly as his fate was, we think it was the result of his own fault or misfortune, and without the possibility of prevention

or avoidance by the defendant company.   His own contributory negligence  bars any right of recovery, and the circuit court erred in not setting aside the verdict.   The judgment of this court is to set the verdict aside, and to remand the case, with directions to grant a new trial.

JUDGMENT REVERSED.