# CHARLESTON.

HAST v. RAILROAD COMPANY.

Submitted September 8, 1902.    Decided March 14, 1903.

1. ABANDONMENT—*Property—Highway.*

    The owner may dedicate his land to the public for use as a highway by acts and declarations, without deed or other writing; but such acts and dec'arations must be deliberate, unequivocal and decided, manifesting a positive and unmistakable intention to permanently abandon his property and devote it to public use. (p. 400).

2. RAILROAD—*Right of Way—Dedication.*

    A dedication by a railroad corporation, to bind the corporation beyond revocation, must be made by the directors, or recognized by them in some way, or be expressly ratified by them, or by such public use for such time and under such circumstances as to justify the inference of such ratification. The mere act of officers and agents making such dedication, without authority from the directors, will not make a valid dedication, unless by such express or implied ratification. (pp. 399, 400).

3. RAILROAD—*Right of Way.*

    Where a railroad company occupies a street which is a public highway in an unincorporater village, and acquires a lot with intent to open through it a way in place of the street, but does nothing more to evince a dedication than to tear down the fence around the lot and allow its use by the public for a way, this does not constitute an irrevocable dedication. (p. 400).

4. CORPORATION—*Dedication—Public Use.*

    A corporation may dedicate some of its land to public use for a highway, if it do not materially interfere with the accomplishment of the purpose of its incorporation. (p. 402).

5. DEDICATION—*Public Use.*

    To render a dedication of land for a highway valid to create

a highway as to a county, so as to charge it with maintenance and repair, there must be an acceptance of the dedication by the proper public authority.   (p. 399).

6.  DEDICATION—*County Court.*

If a land owner dedicate a highway over his land for public use by a valid dedication binding on him, and it is accepted by the public by general use of the way, it becomes a highway as between the dedicats and public beyond his revocation of the dedication, though the dedication is not accepted by the county court; but this does not charge the county with maintenance or repair of the highway.   (p. 399).

7.  RAILROAD—*Dedication.*

Oral evidence of a general manager of a railroad company that the company purchased a lot of land for the purpose of dedicating it to public use as a street and tore down the fences around it and threw it open to public use, does not prove such dedication of it as to render the dedication irrevocably.   (p. 398).

8.  RAILROAD—*Damages—Streets.*

In an action by the owner of a village lot against a railroad company for damage to the lot resulting from the taking of a street near the lot by the company for its track, the company gave oral evidence to show in defence or mitigation of damages, that the company had dedicated a street or way over a lot owned by it in lieu of the street taken for its track, and thus took the position that such dedication had been made.   This did not constitute an estoppel against the company's, afterwards in other suits, denying a dedication, so as to defeat or mitigate a recovery of damages.   (p. 398).

9.  RAILROAD  COMPANY—*Dedication—Attorney.*

In such action an attorney of the railroad company in adducing evidence to prove such dedication and making such defence of dedication does not bind the company against its denial in another suit of such dedication.   (p. 399).

Appeal from Circuit Court, Mineral County.

Action by Viola .G. Hast against Piedmont & Cumberland Railroad Company.   Writ of error and *supersedeas.*

Judgment for plaintiff and defendant appeals.

*Affirmed.*

C. W. DAILY, for plaintiff in error.

F. M. REYNOLDS, for defendant in error.

BRANNON, JUDGE:

The owner of land in Mineral County, across the river from the City of Cumberland, laid out a village by platting his land into lots and streets. The village is called Ridgely, but is not incorporated. In the village are two streets which we will call A and B. Viola G. Hast and Henrietta Hast own a house and lot on A street near the corner of A and B streets. The Piedmont and Cumberland Railway Company made an embankment for its tracks, taking part of B street and also part of A street, and laid its tracks on the embankment, and the said Hasts sued the company for damages resulting to their property from the embankment by rendering access to it less easy and from inconvenience and detriment from the operation of the railroad, and recovered a judgment in the circuit court of Mineral County for three hundred dollars damages, from which judgment the railway company has taken this writ of error. On the trial the company sought to defend itself upon the theory that when it so occupied those streets it acquired a lot in the village and tore down the fences enclosing it and threw a part of it open to the public use in lieu of the parts of the streets which it had occupied, and thus exchanged part of that lot for the parts of the streets which it thus occupied, and thus dedicated a part of the lot to public use for a public way giving access from A to B streets.

The company gave evidence to prove by its general manager, that about the time of laying the tracks in the streets, it had purchased a lot for a street or way for the public, in the room and stead of the streets so occupied, and that the company, in execution of that purpose, took down the fence from around the said lot and threw it open to the public to use in lieu of the streets, though no street was actually constructed upon it, and that the public had so used it ever since in the same condition in which it was when it was so thrown open. It was otherwise proven that the public had so used the way over said lot. The company asked the court to instruct the jury that if they found from the evidence that the company acquired the lot with intent to dedicate it to the public use for such way, and did throw it open in execution of such intent, and that the public had since used it as a way, then such action amounted to a dedi-

cation of the ground as a public way, which could not be re-
voked by the company, and that the company could not there-
after close up the said way.

The defendant thereby sought to show that the plaintiffs, hav-
ing thus a way from street to street by reason of such dedication,
either suffered no damage, or that such damage would be miti-
gated by the presence of the way under such dedication.

This presents to us the question whether there was a dedica-
tion binding upon the company beyond its power of revocation.
Is this substituted way a public highway? Can the company
hereafter disavow the dedication and close up this substituted
way? A way may be a highway for some purposes and not for
others. It is very certain that under our statute, Code, chapter
43, section 31, declaring that every road, street or alley used
and occupied as a public road, street or alley, shall be deemed
to be a public one, mere user by the public however long con-
tinued will not make it a highway as regards the county or mu-
nicipality, that is, to charge such county or municipality with
the burden of maintenance, or of liability for injuries arising
from non-repair or defects. To make it a highway for those pur-
poses our decisions are distinct that there must be shown action
by the county court establishing, or in some way, recognizing
the road as a highway, or it must be shown that it has been
worked by a public surveyor of roads. An individual may lay
out a way upon his land for public use, and do all in his power to
dedicate it to the public use, and it may be accepted by the pub-
lic by using it as such, but it does not thereby become a public
highway so as to charge the county with the burdens above
stated. It is true we find much law to show that by common
law a dedication may be made by an owner of property, which if
accepted by the public by long user, makes the way a public high-
way for all purposes, even to charge the public with its main-
tenance and with liability for its defects. Elliott on Roads &
Streets, sec. 154; 2 Dill. Munic. Corp. sec. 642. But in this
State our decisions do not allow the public use of a way to oper-
ate as an acceptance of a dedication so as to bind the county.
*Sampson* v. *Goochland Justices,* 5 Grat. 241; *Talbot* v. *King,*
32 W. Va. 6; *Ball* v. *Cox,* 29 W. Va. 407; *Yates* v. *West Graf-*
*ton,* 33 *Id.* 507; *Dickens* v. *Salt Co.,* 41 *Id.* 511; *Kelley's Case,*
5 Grat. 632. If an owner of land lays it out into streets, lots and

alleys and sells lots with reference to such streets and alleys by plat or otherwise, it is a dedication of such streets and alleys irrevocable by him, and makes them public as to all lot owners, and consequently as to the general public. He is estopped to deny them that character. *Ridle* v. *Charles Town,* 43 W. Va. 796; *Skeen* v. *Lynch,* 1 Rob. 186; 9 Am. & Eng. Ency. L. (2d ed.) 34. To make a dedication valid there must be a dedication and an acceptance; there must be two parties, the dedicator and an acceptor. 9 Am. & Eng. Ency. L. (2d ed.) 43; Elliott on Roads & S. sec. 150; Angell on Highways, sec. 157. In the present case the county court or surveyor in nowise accepted the dedication, and the question comes up, not whether the way is a public way as regards the county, but whether it is a highway as regards the plaintiffs and the general public. In other words, has the railroad company bound itself against a recantation of its dedication? Can it close this dedicated way against the plaintiffs and the general public? Under this head the first question is: Was there a real act of dedication? It is not to be denied that as between the public and the dedicator there may, under circumstances, be created a highway binding on the dedicator in favor of the public. This seems to be the case not only where people have expended money on the faith of such dedication, but also where there is no such expenditure; but the act of dedication must be shown by acts and declarations deliberate, unequivocal and decided, manifesting a positive and unmistakable intention to permanently abandon his property to the public use. *Pierpoint* v. *Harrisville,* 9 W. Va. 215; 9 Am. & Eng. Ency. L. (2d ed.) 38. Now the mere opening of this lot to the public use is not adequate to evince an irrevocable purpose to dedicate, for we may attribute that use to a mere license, rather than an intent to dedicate. It is so common for railroad companies to let their lots lie open that we attribute it to license, mere permissive use, not to an intent to dedicate. Nor does the fact that the company purchase this lot with an intent to dedicate it bind the company, as it might change its notion. There is not such an unequivocal act as speaks unalterably an intention to dedicate. No writing is necessary to make a valid declaration of dedication. 9 Am. & Eng. Ency. L. (2d ed.) 34; *Pierpoint* v. *Harrisville,* 9 W. Va. 533. There is no act to tie the company to this dedication. Who made this dedication?

I interpret the evidence to mean that the general manager of the company threw open this street, or some agent of the company when constructing the road. There is no action by the directors, and the president or general manager would have no power, unless authorized by the directors, to dedicate this lot away. 1 Elliott on Railroads, sec. 285. "A general business and financial agent, though he is also the president, has no authority to sell or mortgage the property of the corporation." 1 Rorer, Railroads, 667. "A general agent of a corporation has no power to convey the real estate of the corporation; to effect such an object a specific authority is indispensable." *Stow* v. *Wyse,* 18 Am. Dec. 99. Some of the authorities hold that in order to bind the dedicator other persons must have expended money or acquired rights on the faith of the dedication, and in the absence of some such circumstances it seems difficult to see how a dedicator can be bound irrevocably, he receiving no consideration, perhaps, and other parties not having made any expenditure on the faith of the dedication. I should have stated a few lines back that we cannot say that an act of dedication binds the company when there is not a shadow of evidence competent to bind it; that is, action of its directors, the only competent and authorized agent of the corporation. Nothing has been shown to bar the company in future from repudiating its dedication.

If time enough had elapsed to bar the company by reason of the adverse continuous, open user by the public, then this way would be a highway valid against the company in favor of the public. Then the public right would rest on the statute of limitations, not on dedication and acceptance. 9 Am. & Eng. Ency. L. (2d ed.) 67. But it is not shown that the period required to thus give title has expired. Thus I see no error in the refusal to give defendant's instructions.

Another point of error is that after a witness had given his opinion that the plaintiff's property had been damaged one-half, and stated that that opinion was based considerably upon the fact that the railroad company might close up the lot which had been opened, counsel for the defendant asked the witness the question, "If the company cannot close up its lot, and assuming that it will be left open for use, what would you say would be the decrease in value then?" and the court refused to allow the witness to answer the question. This question is

based on the assumption that there was a valid, binding dedication, when none was shown; it assumed also that the company would not and could not close the way, when nothing was shown to debar it, adequate to debar it from so doing, and therefore the court did not err in refusing to allow the question to be answered.

The point is made by a second brief filed by counsel for the plaintiffs that a corporation cannot make a valid dedication for the reason that it can perform only certain functions, is incorporated to do only certain things, and cannot do other things not contemplated by its charter; in other words, that such an act would be *ultra vires*. Some English cases are cited to this effect; but in the immense ocean of conflicting and confusing cases, we can find authority for almost any proposition. It is very well settled by modern authority that corporations may dedicate land to the public use. Elliott on Roads & S. (2d ed.) sec. 146; 2 Elliott on Railroads, sec. 425. So it do not interfere with the purposes for which it was incorporated, a private corporation may make a dedication. 9 Am. & Eng. Ency. L. (2d ed.) 33.

The point is made that two of the plaintiffs' instructions assume that the plaintiffs were entitled to damages by the language that "the jury in estimating the amount of damages may take into consideration," etc. I do not think this language assumes the right of recovery. Surely the jury would understand that the question of damages depended on evidence, and that it was with the jury to pass on such evidence, and that the court did not intend to express an opinion upon that point. We must not so lightly assume that a jury does not understand its functions, and will so easily be mislead in the performance of its duty. Besides, I think the language is very common in instructions telling the jury how to estimate damages, and is not inapt or improper. And still further, if these instructions taken alone were objectionable on that account, the objection would be obviated by the fact that another instruction for the plaintiff reads: "The court instructs the jury that if they believe from the evidence that the property of the plaintiffs has been permanently injured and its value depreciated by the laying and construction of the embankment and railroad track, and that the defendant constructed and laid, or had constructed and laid by its agents,

the said embankment and track, then the plaintiffs are entitled to recover damages," thus plainly telling the jury that they could only find damages on proof of the facts supposed in the instruction.

Plaintiffs' instruction No. 3 as to the mode of assessment of damages is supported by principles contained in *Stewart* v. *Railroad Co.*, 38 W. Va. 438; *Blair* v. *City of Charleston*, 43 *Id.* 62; *Quinn* v. *Railroad Co.*, 46 *Id.* 151.

I should have noticed in its proper place the position taken by defendant's counsel that what it did in occupying the streets and in their place dedicating a passage over its lot, was an exchange justified by section 48, chapter 54, Code, 1899, providing that a corporation may take and hold "under any grant or ordinance made by a municipal corporation any interest or right such municipal corporation may have in any street, alley or public ground, and may in exchange therefor, in whole or in part, dedicate or otherwise secure to public use another street, alley or parcel of ground out of real estate owned by such railroad corporation." Now, it is apparent that there is no justification under this section, because there is no warrant for a railroad company to take a street and make such exchange, unless a statute allows it, and this statute does not allow it, because it in terms applies to incorporated municipal corporations, and contemplates a treaty of exchange between the two corporations evidenced by proper memorials of the consent of the municipality, if not of the actual dedication also. Moreover, under that section what the company did was not of such a character as to constitute such a dedication in such exchange, even if the statute applied. Under that statute there must be an organized town in order to become a party to the exchange. It should be affirmatively shown that the exchange was declared by the directors of the company. It does not appear that the company did any acts or made any declarations expressive of such dedication at the time and constituting a valid dedication. There was no express dedication; at best, only an implied dedication, and the mere tearing down the fences on the lot and the passage of people over it are not enough. There was no consent of the county court.

Therefore we affirm the judgment.

*Affirmed*

ON REHEARING.

BRANNON, JUDGE:

Upon rehearing it is argued that the above opinion does not correctly interpret the evidence of the general manager.

That evidence reads: "C. L. Bretz, general manager of the West Virginia Central and Pittsburg Railway Company, operating the railroad of the defendant company ever since its construction in 1886 or 1887, being introduced as a witness on behalf of defendant, testified that about the time of the laying of the tracks in the streets aforesaid, the defendant company purchased said lot No. 55 for a street or way for the public across it, in the room and stead of the streets occupied by the company's tracks, and that the defendant, in pursuance of that purpose, took down the fence from around said lot, and threw it open to the public to be used in lieu of said streets, though no street or roadway was actually constructed or thrown up and that the public had so used it ever since in the condition so thrown open, and other witnesses, both on behalf of the plaintiffs and defendants. testified that since the construction of said tracks in the streets aforesaid the public had used said lot No. 55 as said streets had been used before that time, (page 36). It is admitted that the defendant introduced no writing purporting to be a formal dedication of said lot No. 55 to the use of the public." It is said that this evidence does not warrant the inference that the acts claimed of as effecting a dedication were done only by the general manager or some agent. As no action of the company was shown or suggested, I still think the interpretation given this evidence is a fair one. But let us take this evidence for all its worth on the line argued by counsel; which is that the witness said that "the defendant company" purchased the lot for a street, and that "the defendant" in pursuance of the purpose to make a street upon it took down the fences. Counsel argues that this language imports, not the acts of a mere agent, but the action of the very company itself, and that though this is not the primary evidence to show dedication, it was not objected to, and no objection can be made to it in the Court of Appeals. *B. & O. R. Co.* v. *Skeels,* 3 W. Va. 556. Our question is not one of the admissibility of this oral evidence. The evidence not hav-

ing been objected to, its admissibility for want of the better evidence is not before us; but its effect is. It is sought to use it for two purposes, one to prove the fact of dedication, the other how, in what manner, by what act it was made, or rather that it was made in an all sufficient mode to bind the company. It must answer for these purposes else it is not adequate to establish dedication; for it is beyond question not sufficient to say in a general way that dedication was made, but it must be shown to have been made by some acts that are "deliberate, unequivocal and decisive, manifesting a positive and unmistakable intention to permanently abandon his property for that specific public use." *Miller* v. *Aracoma,* 30 W. Va. 606. Does the evidence of the manager meet this demand? He does not state the fact of dedication, but says that he meant that. Then, when we ask how, he does not say that there was any deed, any written declaration in any form by resolution or declaration by the company, nor that there was any open, deliberate declaration of dedication—nothing to irrevocably bind the corporation. How did the corporation dedicate? He says it purchased a lot for a street for public use. A purchase only is not enough. This is a mere intent, and this purchase is of doubtful import to manifest even such intent, because the company occupied part of the lot with its track. We may more readily attribute the purpose of the purchase as one for its own use. What else did it do? Threw down the fence and left the lot open. It would do that for its own convenience. Do these acts show an unequivocal, deliberate final intent to abandon ownership, so that in future the company would be clearly barred from otherwise using the lot to its own purpose? Are the plaintiffs to be in peril of the company's so doing in future, and be compelled to rely on such frail evidence of dedication? To hold the plaintiffs to a dedication we must be able to say that they are full handed with evidence of facts incontrovertibly showing in all the future that there was such conclusive dedication, and this we cannot say. Taking this oral evidence for all that it is worth, it is not enough to prove this. By so holding would we leave them safe? We are called upon to say now, in this present suit that a future suit involving the dedication cannot but be decided against the company in favor of the plaintiff. To do this we should have very clear evidence of acts of the company from which it can-

not in future escape; and this evidence does not furnish them. Is there a deed, a resolution of the directors making or ratifying a dedication? We do not know. The court certifies "that the defendant introduced no writing purporting to be a formal dedication of said lot No. 55 to the use of the public." If in truth there was any writing the company should produce it, and that oral evidence does not tell its contents. "Generally, parol evidence, though not excepted to when offered or afterwards, is not competent to prove the contents or effect of a deed." *Warren* v. *Syme,* 7 W. Va. 474, sec. 11. The evidence relied upon the fixed dedication, disregarding its secondary character, is too short. It does not prove acts of dedication setting it beyond question. To cite an instance of the danger of relying upon it take the case of *Williams* v. *N. York & N. H. R. Co.,* 39 Conn. 509. A railroad company had a passenger station and later bought an adjoining piece making a large space in front of the station, which piece was connected with a public street at one end, and the city made a street to its other end, and the public constantly and freely used the ground, not merely to go in to the station, but from the one street to the other. A party thinking the space was a public highway bought land adjoining and built buildings fronting on it, and in connection with the company laid a stone walk along the front of great benefit to his premises. Years afterwards the company undertook to remove the walk for more room for carriages in front of its station, and upon an injunction it was held that the company had not dedicated the land as a highway, and that it was not estopped to deny a dedication. So, in this case does the mere purchase of the lot involved in this case when the company needed and used a portion of it for its track, and leaving it open, which it would prefer to do for its own purposes as long as it chose, without doing a bit of work to make a street, stop the company from reclaiming it to meet future want? We hold that it does not.

In fact is it not more plausible to say, that if the manager did not merely mean that he or some other agent made the dedication, he was giving his own mere opinion that what the company had done, constituted a dedication. If so, he may be mistaken. As we are asked to say in advance that for all future suits there was a final dedication we must demand evidence beyond all

controversy; otherwise we imperil the plaintiffs. Mere user for a short time is the strongest element shown, but that is frail reliance, especially as there is no municipal acceptance. "Mere use of a road by the public for however long a time, will not make a public road. On the contrary the mere permission by the owner of the land to the public to pass over the road is, without more, to be regarded as a license, revocable at pleasure." *Dicken* v. *Salt* Co., 41 W. Va 511; *Harris Case,* 20 Grat. 833.

But it is argued that even if this oral evidence does not show dedication, the fact that on the trial the railroad company took the position that it had dedicated, was an admission of that dedication, and constituted ever after an estoppel against its denying such dedication, and this on the principle that when a party once takes a position in a suit he can not afterwards change and take an inconsistent position; that the company could not say in the trial that it had dedicated a way over the lot, and in future deny it. It is very material to see whether the position so taken would be an estoppel absolutely forbidding the company from afterwards contesting dedication, or only an admission going in evidence to have only such weight as a jury might thereafter give it; for if it be not an estoppel we cannot bind the plaintiffs by it, as they must be left free from danger of revocation of the dedication. I do not regard it such estoppel, though as evidence it might be strong in another contest. *Wilson* v. *Phoenix,* 40 W. Va. 413. In *Beatty* v. *Randall,* 5 Allen 44, it was held that a party in an action of tort for conversion of personal property was not estopped by the fact that in a bill in equity by himself and wife they asserted a joint property in himself and wife. "The pleadings of a party to one suit may be used in evidence against him in another, not as an estoppel, but as proof open to rebuttal and explanation. But in order to bring such admission home to him the pleadings must either be signed by him, or it must appear that it was within the scope of the attorney's authority to admit such facts." *Buzzard* v. *McAnulty,* 77 Texas, 438. On one trial between the same parties counsel admitted incorporation of his client, and it was held that it did not estop a denial of incorporation on a second trial, but that it was evidence as an admission. *Perry* v. *Simpson Co.,* 40 Conn. 313. A party in an answer made a statement, and it was held that parties claiming under her were

not estopped to contest the statement; but it had only the effect of an admission as evidence. *Tabb* v. *Cabell,* 17 Grat. 160. See *Penn* v. *Penn,* 88 Va. 316; 11 Am. & Eng. Ency. L. 446, 449. We have cited two cases in the Supreme Court of the United States to sustain the contention that the position of the defendant is an estoppel. *Davis* v. *Wakelee,* 156 U. S. 680, and *Michels* v. *Olmstead,* 157 *Id.* 198. In the former D. had a proceeding for discharge as a bankrupt, and W. had notes against him, and got judgment on them in a California court on publication. When D. moved for a discharge W. opposed it, and D. said that as W. had got judgment by leave of the bankrupt court, which would still stand good, he could not resist a discharge, and the court so held and granted a discharge. In a subsequent suit in New York by W. against D. to enforce an estoppel to prevent D. from asserting in any suit that might be brought on that it was void, the Supreme Court held that D. could not say that the judgment was void for want of jurisdiction. This was going far; but when thought of it is the ordinary case of estoppel by conduct, where one party takes a position and succeeds in it and gets the benefit of it to another's harm he is estopped to recant it.

In the second case a party sued at law upon a written contract offered evidence to show that it was not intended to be binding, which on motion of the plaintiff was rejected as incompetent to destroy a writing; afterwards on a bill to enjoin the prosecution of the action at law the plaintiff in the action was held estopped from saying that the evidence was admissible in the law action. Here too, the party got the benefit of the position which he assumed. Where a party takes a position and gaines its fruit, and thus detriments another, he cannot go back on it.

There is another objection to holding that the plaintiffs can securely rely upon the defence made by the company as their protection in future against its denial of a dedication. There was no plea of such dedication, nothing of record to signally and explicitly manifest that the company admitted as a binding fact the fact of dedication. It simply gave some evidence to show it and asked instructions upon the theory of dedication. The estoppel is inferential, not so plainly manifested as if in an answer or plea. "Certainty is essential to all estoppels." Bigelow on Estop. 578.

The door is left too plainly open to the company hereafter to dispute dedication. But even if there had been a pleading explicitly stating the fact of dedication filed by an attorney, I do not think it would be an estoppel further than for that particular suit. "They (admissions in pleadings )are admissible also against him in another suit in behalf of either the adverse party or a stranger, provided they were sworn to by the client personally, or were drawn under his special instruction." 1 Am & Eng. Ency. L. (2d ed.) 720.

Another consideration detracting from the argument that the position of dedication taken by the company works an estoppel is, that it was taken by an attorney. The company was a corporation not physically present, but was represented by an attorney. No resolution of the directory empowering him to admit a past dedication, or then make a new one at the trial, appears. An attorney is a special agent, of limited authority. He may make admissions in matters relating to the progress of the particular trial or case; but do they bind clients elsewhere and for other purposes? Can an attorney in defending a suit by taking a position or pleading admit a dedication to take away, not merely for the purposes of that suit, but for other suits, the land of a corporation? "Pleadings of a party in one suit may be used in evidence in another, not as an estoppel, but as proof, open to rebuttal and explanation, that he admitted certain facts." 1 Whar. Ev. sec. 838. Statements in pleadings signed by an attorney only, not sworn to by the client, are not competent evidence against the latter in an other suit when the statements are made without his knowledge or consent." Note 1 in 1 Am. & Eng. Ency. L. (2d ed.) 720.

It seems to me that there is a difference between an attorney of a corporate and a natural person. Acts of the attorney outside the scope of his authority are not binding on his client. Even in the case of a natural person, the power of an attorney is only to do those acts necessary or incidental to the prosecution and management of the suit which affects the remedy only, and not the cause of action. Weeks on Attorneys 382. Hence he cannot waive the essential rights of his client without his consent. He cannot enter a retraxit, commute or compromise his demand, receive pay in anything but money and the like. *Crothy* v. *Eagle,* 35 W. Va. 143; *Wiley* v. *Mahood,* 10 *Id.* 206. As

nobody but the directory can pass right to the corporate realty, it seems to me there ought to be shown express authority. I cannot see that the attorney in this case can admit away the right of the company to its land so as to deprive it forever of that land. I cannot see that his acts would go beyond that suit as a conclusive estoppel—not even as an admission. We see no reason why we should not repeat our affirmance of the judgment.