# CHARLESTON.

## PENCE v. BRYANT.

Submitted June 6, 1903—Decided November 28, 1903.

1. OBSTRUCTION—*Public Nuisance.*

   Obstruction of a public street by an individual is a public nuisance and an indictable offense, and an injunction may be maintained to stop or abate it, not only by the county or municipality, but by an individual whose lot abuts on the street, and is materially injured by such obstruction. (pp. 265, 266).

2. BUILDINGS—*Obstructions—Injunction.*

   One owning a lot abutting on a street may maintain an injunction against a person obstructing it by the erection of a permanent building upon it, if it injures the lot. (p. 266).

3. CITY STREETS.

   By section 28, chapter 47, Code 1899, a town council may vacate a street in whole or in part for public welfare, but not that the ground may go to private use. (p. 267).

4. STREETS—*Dedication.*

   When land has been dedicated for a public street, and it has been accepted by long use by the general public as a street, so that retraction would be hurtful to the public, the dedication cannot be retracted, though no muncipal order or action has accepted the dedication, and it is a valid street as between the dedicator and his alienees an dthe public. Without such corpo-

rate acceptance the town would not be chargeable with the street.    (p. 267).

5. STREETS—*Damage.*

Can the owner of a lot upon a street damaged in access by reason of the vacation of the street recover damage from the town? Is such access a property right adhering to the lot so that such vacation cannot be made without compensation? (p. 270).

6. STREETS—*City Council.*

The statute giving the town council power to vacate streets does not give it power to vacate a street or a part with sole intent and purpose for the benefit of a private person or to free his land from public easment, but only for public ends and reasons. An ordinance of vacation made, not for public benefit or purpose, but only for the benefit of a private individual is void. (p. 271).

7. STREETS—*City Council.*

Whether the motives of a town council in vacating a street are proper cannot be judicially inquired into; but the aim and purpose of the vacation, and the end accomplished, may be considered in passing on its validity. If the purpose effected by it is within the power of the council, its act will be valid; otherwise not.    (p. 271).

8. STREETS—*City Council.*

An ordinance of a town council reducing the width of a street from forty to fifteen feet simply, not specifying what part of the street is to remain such, is void for uncertainty.    (p. 272).

Appeal from Circuit Court, Mercer County.

Bill by Jennie K. Pence against R. G. Bryant and others. Decree for defendants, and plaintiff appeals.

*Reversed.*

R. C. & B. McCLAUGHERTY and MR. WILLIAMS, for appellant.

A. W. REYNOLDS, J. S. CLARK and J. M. McGRATH, for appellees.

BRANNON, JUDGE:

Jennie K. Pence is the owner of a lot lying between Main and North River streets in the town of Bramwell, Mercer County. It fronts on both streets. Along its side, between it and the

depot lot owned by the Norfolk and Western Railroad Company, is a space of ground about forty-one feet wide, and extending one hundred and twenty-five feet between those streets. R. G. Bryant and W. W. Hamilton purchased part of this parcel of land, and upon it were excavating for the erection of a building, its wall to be fifteen feet distant, but leaving along her lot a street or alley fifteen feet wide between Main and North River streets. Jennie Pence claims that the entire space was years ago dedicated by the Bluestone Coal Company as a public street and has been recognized by the town and used as such. The council of Bramwell, 22nd January, 1902, adopted the following ordinance: "It appearing that the plat of the town of Bramwell, which is of record in the clerk's office of the county court of Mercer county, does not show the width of the street adjoining lot No. one in said town, and extending from Main street to North River street, and on the request of the Pocahontas Coal and Coke Company, who own the land lying between said street and the station grounds of the Norfolk & Western Railway, that council determine on the width of the street, it was, on motion, unanimously resolved, that the width of the street be fixed at fifteen feet, and hereafter to be known as Pence street, and to extend from Main street to North River street." When Bryant and Hamilton were engaged in the work of erecting their building Jennie Pence obtained an injunction against their further work, but on hearing it was dissolved, and the court later refused to reinstate it, and she appeals.

For the defense it is claimed that equity has no jurisdiction, as title is in controversy, and the right in contest must be first adjudicated at law before an injunction can be allowed, and *Watson* v. *Ferrell,* 34 W. Va. 406, and *Becker* v. *McGraw,* 48 *Id.* 539, are cited to support this position. These cases have no application. This is no controversy as to title to land. The plaintiff claims no ownership in the ground. She claims that a public highway affording access to her property is being permanently taken from the public, and passage over it forever obstructed, to the special and lasting detriment of her property. If this is true, a public nuisance is being maintained; for from the earliest period the common law has branded the closing or obstruction of a highway as a public nuisance indictable as a

public offense, and our Code, chapter 43, section 45, makes it an indictable offense. 4 Bl. Com. 167. That injunction lies in the first instance, without first having recourse to a law tribunal, to prevent a public nuisance in the start, to prevent its maintenance, and to abate it is shown by abundant authority, and this includes obstruction of a high-way. *Moundsville* v. *Ohio R. Co.* 37 W. Va. 92; Authorities collated in *Town of Weston* v. *Ralston,* 48 W Va. p. 194; (36 S. E. p. 456). See *Columbian Club* v. *State,* in vol. 2, p. 340, of that valuable work, Amer. & Eng. Dec. in Eq. 340, and note p. 352; *Huron* v. *Bank,* 59 Am. St. R. 769.

But though there is jurisdiction, there is a question, not of jurisdiction exactly, but whether the plaintiff has such interest as will enable her to invoke that jurisdiction. The nuisance is a public one. Beyond question the town could invoke such jurisdiction; but can she as an individual? The general rule is that an individual cannot enjoin a public nuisance; but if it peculiarly affect him by material and substantial damage to the use and value of his estate, he can have the benefit of an injunction. *Talbott* v. *King,* 32 W. Va. 6; 2 Amer. & Eng. Dec. in Equity 355. I conceive that I need not elaborate to show that when one is unlawfully building a house in a public street which gives access to a hotel, though it be not the only access, narrowing it from a street forty-one feet wide to an alley of fifteen feet, running along the length of the hotel, an entrance being on that street, peculiarly affects the hotel in use and value as a great damage to it. As an abutter he has a peculiar interest; he is an adjoining owner, and has peculiar interest in the street. 2 Smith, Munic. Corp. section 1214; Elliott on Streets, pages 709, 876; 1 Am. & Eng. Ency. L. 224.

Counsel have discussed the question whether the space of forty-one feet was dedicated to public use, and accepted as a dedication, and whether its use as a street made it such. Then we meet with the town ordinance above given. It fixed the width of the street, if it never had been fixed, and if it had been a street forty-one feet wide, that ordinance operated as a vacation in part if valid. Our statute gives a town council wide power to "vacate, close, open, altar" &c "roads, streets, alleys." Code 1899, chapter 47, section 28. This subject is treated in that latest and elaborate work on Municipal Corporations by

Smith, vol. 2, section 1283. It says, "Where the power to vacate a street is vested in the municipality, the exercise of that power is discretionary." "A part vacation leaving access to the property one way the same as before does not entitle the owner to damages."

"In the absence of fraud courts will not review the action of a city council in vacating a street, and the general rule is that the determination of a proper board as to the opening or closing of a street is not the subject of review by the courts. The right to vacate includes the right to vacate a part of the street as well as the whole." Elliott on Streets, section 879, states the same law. In section 451, we read: "Power to regulate and improve streets and sidewalks includes the power to determine their width." Our act gives all these powers. "A statute authorizing the vacation of a highway will, it seems, authorize the vacation of a part thereof." 15 Am. & Eng. Ency. L. 397.

The appellee says that the street claimed by Jennie Pence to be a street is not a street, because never dedicated or recognized by the corporate authority of Bramwell by council action, since there is no evidence of acceptance of the dedication, and before acceptance it may be withdrawn, as may be said to have been done by the sale of a part of the street to the defendants. I think the law books will sustain the position that for some purposes such municipal acceptance is necessary; for others not. If it is sought to charge the town with neglect to repair, it is necessary; but when the contest is, as in this case, between dedicator or his alienees and a private individual or the public, it is not indispensable. *Hast* v. *Railroad Co.,* 52 W. Va. 396.

"While acceptance by formal adoption by public authorities or by public user is necessary to impose on the public the duty to keep in repair a dedicated high-way or street, still that is not necessary to the consummation of the dedication so as to cut off the owner from the power of retraction, or to subject the dedication to the public use wherever, in the estimation of such authorities, the wants or convenience of the public require it for the purpose for which it was originally given." *Board* v. *Seal,* 14 Am. St. R. 545; *Moose* v. *Carson,* 17 *Id.* 681; 2 Smith, Munic. Corp. section 1281; 2 Dillon, Munic Corp. section 642; 2 Green-

leaf Ev. section 662; Elliott, Roads and Streets, sections 150, 154; *City of Winchester* v. *Carrol,* 99 Va. 727.

The owner of the land, where now is the town, laid it off into squares, lots and streets, and made a plat. That plat shows North River street and Main street. Between these streets we find squares 1 and 3; on the south side of Main street we find squares 2 and 4. Each of these squares is laid off into lots by number. In square 1 we find lot 1, between those streets, and along its side an open area, not marked as a street, between lot 1 and the right of way of the railroad. It looks like the company owning the land designed letting that whole area remain open for ready access to what was designed to be the station, and where it now is. While such was the state of things, the Bluestone Coal Company by deed 26th February, 1885, conveyed to William Berry lot 1 in square No. 1 now owned by Jennie Pence. This deed makes the lot begin "at the southwest corner of square No. 1" and runs thence to lot No. 3 and thence one hundred and twenty-five feet to North River street, and with it forty feet to the "N. W. corner of square No. 1," and says that the lot is known "as lot No. 1, and for which reference is made to town plat of Bramwell, recorded in clerk's office county court." This deed recognizes the square and this lot, and this plat. That plat shows a vacant area along the side of lot No. 1. Why did the owner lay out the land into squares and lots, leaving this space vacant? Why did it not cut it into lots and make lot No. 1 there? Because the intention was to have it open. It was designed to have at least a street there, because the series of lots between North River and Main streets did not include the area. No square or lot took it in. Such the start. The engineer laying off the town staked off a street there. While we admit that a mere officer of a corporation cannot make a dedication, yet this engineer Welch was deputed to lay off the town, and I incline to think that his action is binding to show an intent to dedicate, as the company sold lots by his work. Later, Bluestone Coal Co., by deed 27 June, 1887, conveyed a lot in that area to the Norfolk and Western Railroad Company, and the deed makes this lot begin at a point on the right of way of the railroad company "in line with the north boundary of lots Nos. 1 to No. 13 inclusive, thence south seven degrees, 8 minutes west, one hundred and twenty-five feet along

the west side of ——————— street to a street corner on the north side of Main street." This deed calls for a street then and yet unnamed along the west side of the Pence lot. It says also that the land conveyed to the railroad company "is described in the survey thereof made by W. W. Coe." Now, this gives this street a place certain, a corner on North River street and a corner on Main. Looking at the plat we see this street laid down along the Pence lot—between it and the lot conveyed to the railroad company. This deed is a plain dedication. The plat is part of the deed and proof of dedication like it—express dedication. *Riddle* v. *Charlestown,* 43 W. Va. 796; *Noonan* v *Braley,* 67 U. S. 499. Is it said that it has no fixedness in place? Who can say that the Pence lot cannot be located, or that the railroad lot cannot be? They can be fixed with mathematical precision. This street occupies all the ground between them. The call for a street corner on Main street indicates that the grantor company regarded this unnamed street as antecedently dedicated; but this is not material, as this deed is a plain dedication. Thus, we have a dedication. Can the land company revoke it? No, because the dedication has been accepted and acted on by the public by use for many years. It has always been driven over and walked over and used by the public as a street, and not a word said against such use by the land company or any body else. This cannot be denied; is not. This acceptance, and dedication makes the ground a street, as between a dedicator and the public, and as between the dedicator and those claiming under it and Jennie Pence. So we held in *Hast* v. *Railroad Co.* 52 W. Va. 396. "Acceptance may be by such long use by the public as to render its reclamation unjust and improper. Both dedication and acceptance may be presumed by long user." *Winchester* v. *Carrol,* 99 Va. 727. See 2 Smith, Munic, Corp. section 1498; Elliott, Roads & Streets, section 133; *City* v. *Stokes,* 31 Grat. 713. We may stop here and say that this street in its whole width was a street from dedication and user merely, without corporate acceptance. Such corporate acceptance is immaterial for the purpose of this case. *Hast* v. *Railroad Co.,* 52 W. Va. 396; *Yates* v. *West Grafton,* 33 *Id.* 507; *Moose* v. *Carson,* 17 Am. St. R. 681; *Board* v. *Seal,* 14 *Id.* 545; *City* v. *Stokes,* 31 Grat. 713.

We do not need to say, but do say, that this street is a street as to the town. The mayor put step stones across it on North River street; it was cleared of rubbish by the town, and as much work done on it as on any other street; the town allowed in it a car used as a house for photography, and received rent for it; the town council declared it a nuisance and ordered it removed, and it is reasonable to say that it was held a nuisance only because in the street; and the town allowed a post office on it, showing that it was regarded a street. Looking at the ordinance of council above fixing the width of the street, it imports the antecedent existence of a street.

So, we have a street of its original width, forty feet, unless it has been cut down to fifteen feet by the ordinance of the council above given. Jennie Pence, as owner of a lot on that street, had a very valuable vested right in it, that of access. By it the main entrance to her hotel is reached. She built on the faith of its continuance as a street. Many cases hold this right of access as a vested property right annex to her lot, protected by that clause of the constitution saying that private property shall not be taken for public use without compensation. 2 Smith, Munic. Corp. section 1283; 5 Amer. R & Corp, cases 117; 2 Dillon, Munic. Corp. section 656b.; Elliott on Roads & Streets, section 877; Sherlock v. Kansas City, 64 Am. St. R. 551; Lewis on Em. Domain section 134; Moose v. Carson, 17 Am. St. R. 681. There are cases which hold that the act of vacation will avail and entitle the lot owner to no remedy. McGee's Appeal, 114 Pa. St. 470; Barr v. City, 45 Iowa 275; State v. Deer Lodge, 19 Montana 582; Levee Dist. v. Farmer, 101 Cal. 178; Mills Em. Domain section 317. The former line says that a vacation of a street ends its existence so far as concerns the town or the general public, but that one owning a lot on the street as a special, peculiar interest from the general public, and can recover damages. I suppose the town and party obstructing would be liable.

It has been suggested that the order of council narrowing the street is void because made only to give back part of the streets to the land company owning the fee, or rather to free it from street service for its benefit. I grant that a council cannot, under the guise of the power to vacate a street, do so not for public interest, but only for private use. The Virginia court

in *Norfolk* v. *Chamberlaine,* 29 Grat. 534, only spoke the general decision in saying: "Public streets are for public use, and the use is none the less for the public at large as distinguished from the municipality because they are situated within the limits of the latter. In other words, public streets are not the property of the municipality, or of the people of the municipality, but of the public at large. * * * Upon these principles I am of the opinion that the council of the city of Norfolk had no authority to pass the resolution granting permission to appellee to occupy, by the steps of his building any portion of a public street." In *Smith* v. *McDowell,* 148 Ill. 51, the subject of power of vacation is well discussed. It is held that by platting of a village the streets, "in their entire width and length," are dedicated to the use of the public, and the village is seized in fee of the streets for the use of the local and general public, holding them in trust for such use and none other; and it may vacate them only where its authorities, in their discretion, determine the street is no longer required for public use; the power of vacation is to be construed in view of the purpose for which the village holds the streets; that it has not unqualified control and disposition of the streets, "and cannot alien or otherwise dispose of them for private use. The muincipal authorities cannot vacate a strip of land along and in a street for the sole purpose of enabling a private person to occupy such strip with a permanent structure appurtenant to his building. Whether the motives of village trustees in voting for an ordinance are proper, cannot be judicially inquired into; but the purpose accomplished by the ordinance—the object attained—may always be considered by determining its validity. If the purpose effected by it is within the power of the trustees, the act will be valid; otherwise not."

I do not question these principles; but they do not fit this case. In the Virginia and Illinois cases the orders of the councils on their face showed that they had for purpose the conversion of the street from public to private use, not the public interest. In this case the owner of the fee simply asked the council to fix the width of the street, and while the result of its action was the return of the ground to the owner free of casement that does not appear to be the purpose and aim of the council, but only resulted as a consequence by law. The fee was in them, and the

action took away its servitude; this was a legal result. But we find the council ordinance void for another reason. It is void for uncertainty. What part of the street remains a street? Which side? Why, that next to the lot of Jennie Pence rather than the other side? For this reason we reverse the decrees and reinstate the injunction.

Reverse decrees made in vacation of the circuit court on 30th September, 1902, and 19th December, 1902, and remand case for further proceedings.

*Reversed.*