## Richmond.

## CITY OF RICHMOND V. MAYO LAND AND BRIDGE COMPANY.

### March 15, 1917.

1. EMINENT DOMAIN—*Burden of Proof.*—A city being about to erect a new and modern bridge across a river, instituted proceedings to condemn an old bridge with its approaches as a location for the new bridge.

   *Held:* That the burden of proof rested upon the owner of the bridge to show that the title to the approaches was in it.

2. DEDICATION—*Proof.*—Where a city seeks to show the dedication of an approach to a bridge clear proof of such dedication is required.

3. DEDICATION—*Bridge Company—Approaches to Bridge.*—A city sought to show a dedication to the public of an approach to a bridge owned by a public service corporation. The approach in question was indispensable to the use of the bridge and the company's control of it was essential to the discharge of its duty to the public. Therefore, the company could not expressly have dedicated the approach unqualifiedly to the city, because such dedication would have been in derogation of its charter obligation to the community at large and *ultra vires* and not binding upon the corporation. If this be so with respect to an express dedication, *a fortiori* must it be true of a dedication sought to be established by implication merely.

4. DEDICATION—*Validity.*—The lawfulness of a dedication, like the constitutionality of a law, must depend not upon what use probably will be made of the property dedicated, but what use can be made of it by virtue of the dedication. Therefore, where a city has power under its charter to close its streets, a public service bridge company can not dedicate to the public as a street the approaches to its bridge.

5. BRIDGES—*Approaches—Alienation.*—The approach to a bridge, being an essential and inseparable part of it, can not be dissevered, since that would deprive the public service corporation of the means of performing a non-delegable duty which it owes to the public.

Error to a judgment of the Hustings Court of the city of Richmond, in a condemnation proceeding. The city assigns error. The defendant assigns cross-errors.

*Affirmed.*

The opinion states the case.

*H. R. Pollard,* for the plaintiff in error.

*C. V. Meredith, Cutchins & Cutchins* and *R. W. Meredith,* for the defendant in error.

W.HITTLE, J., delivered the opinion of the court.

By authority of an act of the General Assembly, approved March 15, 1906, the city of Manchester was annexed to and became part of the city of Richmond, Acts 1906, p. 370. By ordinance approved March 5, 1910, it was provided that the consolidated municipality should construct and maintain a modern up-to-date bridge across James river, either on the site of Mayo's bridge or so near thereto as to afford direct communication betwen Hull street in the city of Manchester and Fourteenth street in the city of Richmond. Accordingly proceedings were instituted in the hustings court on behalf of the city against the Mayo Land and Bridge Company, owners of Mayo's bridge, to condemn the old bridge and site as a location for the new bridge.

It was conceded that the Mayo Land and Bridge Company owned the old bridge and the strip of land across James river on which it was erected; but difference having arisen between the parties touching the company's alleged ownership of the approaches to the bridge, it was agreed that the commissioners should separately appraise the main structure and site and the northern and southern ap-

proaches, respectively. Thereupon the appraisers reported, (1) that $112,000 would be just compensation for the bridge and site, including a brick building adjoining the dock at the northern terminus; (2) that $5,500 would be just compensation for the strip of land lying on the north side of the river between the terminus claimed by the city as Fourteenth street and that to which the defendant company asserted title; and (3) that $2,500 would be just compensation for the strip on the south side between the terminus claimed by the city as Hull street and that claimed by the defendant.

The city paid into court the $112,000 which was accepted by the defendant company and is not involved in this controversy.

At the hearing, the hustings court confirmed the report of the commissioners with respect to the $5,500 assessment, but overruled their finding of $2,500 for the southern approach to the bridge. A writ of error and supersedeas was awarded the city to the order allowing the former assessment, while the defendant in error assigned cross-error to the disallowance of the $2,500. We shall consider these assignments in reverse order.

1. His Honor, Judge Richardson, in a written opinion, disposed of the question involved in the cross-assignment as follows:

"As to the strip of land on the south side of the river heretofore mentioned and claimed by the Mayo Land and Bridge Company as its property, there is no competent evidence in this record to show that the said Mayo Land and Bridge Company, or their predecessors in title ever owned the said strip of land, and I am further of opinion and do decide that the said strip of land is, and has been for more than a century, a public street of the city of Manchester * * * and that the Mayo Land and Bridge Company is not entitled to compensation for the same."

The record sustains that conclusion, which is strengthened by reference to the case of *Mayo* v. *Merchie,* 3 Munf. (17 Va.) 358. From the latter case it appears that when Colonel William Byrd founded the "town of Manchester, by way of lottery," the agents appointed by him to superintend the laying off and bounding of the town, expressly set apart "the slip of land which lies between James river and the lots of the said town, near what is now called Mayo's bridge, as part of the said town, to be annexed thereto, and held by the inhabitants thereof, as a common, forever." Conformably to that plan the property was conveyed by Colonel Byrd to trustees for the town. It also appears that John Mayo subsequently obtained from Colonel Byrd, for "a trifling consideration," a deed, without warranty, conveying to himself the above mentioned "slip." The appellate court declared the latter deed inoperative to pass title to the "slip," but modified the decree of the Superior Court of Chancery for the Richmond district, so as to exclude from its operation ten feet of land between the river and canal belonging to Mayo.

The burden of proof rested upon the defendant in error to show title to the southern approach to the bridge, and we are of opinion that the evidence is insufficient for that purpose.

2. This brings us to the consideration of the remaining question: The action of the hustings court sustaining the title of the Mayo Land and Bridge Company to the approach to the bridge on the north side of James river, and directing the city of Richmond to deposit to the credit of the cause $5,500, with interest, the amount ascertained by the appraisers to be just compensation therefor.

This issue is greatly simplified by the following stipulation of counsel:

"It is agreed that the city of Richmond recognizes the original ownership of the Mayos in the strip of land begin-

ning about 778 feet north of the canal connecting the basin and the dock, spoken of on some of the maps as the dock or canal; that the abutment or causeway began about this point and included the abutment or causeway of the bridge at the foot of Fourteenth street crossing this canal, which abutment and approach or causeway were the property of the Mayos, and a part of the approach, abutment or causeway of the bridge proper; that from this point to the northern end of Mayo's bridge proper, the land, trestles, causeway and retaining walls were at one time built by the owners of Mayo's bridge, and the trestle changed to a causeway as the land was filled up, either artificially or by natural accretions; and that this original approach or causeway is now the strip of land extending from the northern side of the canal down to the Mayo bridge proper at the present margin of the river; and that originally Fourteenth street stopped just north of the canal over which there is now and always has been a small bridge, owned by the Mayos at one time. The city recognizes the original ownership of the Mayos in the said strip of land and makes no claim to same by express dedication of the same by deed or grant; but relies upon an implied statutory dedication of said strip of land, causeway or approach, and upon sundry actions of the council of the city of Richmond in treating the land in controversy as a public street and as an acceptance of the same and upon alleged recognition by the Mayo Land and Bridge Company of the implied or statutory dedication and the alleged acceptance as aforesaid. This agreement applies only to the northern abutment of Mayo's bridge."

The opinion of the learned judge of the hustings court contains an excellent discussion of the evidence bearing upon the alleged implied statutory dedication by the Mayo Land and Bridge Company of its northern approach to the bridge to the city of Richmond for a public street; and we agree with him that the city has not maintained that con-

tention with the clear proof required of those claiming such dedication, but that the weight of evidence was the other way. *City of Norfolk* v. *Southern Ry. Co. et als,* 117 Va. 101, 83 S. E. 1085.

There is another view of the question, however, which renders it unnecessary to pursue that inquiry in detail. The Mayo Land and Bridge Company is a public service corporation, and the approach in question is indispensable to the use of the bridge and the company's control of it is essential to the discharge of its duty to the public. Therefore, the company could not expressly have dedicated the approach unqualifiedly to the city, because such dedication would have been in derogation of its charter obligation to the community at large and *ultra vires* and not binding upon the corporation. If this be so with respect to an express dedication, *a fortiori* must it be true of a dedication sought to be established by implication merely.

The city has power under its charter to close its streets and alleys (City Code, 1910, charter sec. 19-g), and the lawfulness of a dedication, like the constitutionality of a law, must depend not upon what use probably will be made of the property dedicated, but what use can be made of it by virtue of the dedication.

In *Thomas* v. *West Jersey R. R. Co.,* 101 U. S. 71, 25 L. Ed. 950, 953, it was held: "The franchises and powers granted to such corporations (public service corporations organized under legislative charters) are, in a large measure, designed to be exercised for the public good, and this exercise of them is the consideration of the public grant. Any contract by which the corporation disables itself to perform these duties to the public, or attempts to absolve it from their obligation without the consent of the State, is a violation of its contract with the State and is forbidden by public policy, and is, therefore, void."

The head notes to the case were prepared by Mr. Justice Miller, who delivered the opinion of the court. At page 953, he quotes with approval from the opinion of Chancellor Zabriskie in *Black* v. *Canal Co.*, 22 N. J. Eq. 130, 133, as follows: "It may be considered as settled that a corporation cannot lease or alienate any franchise, or any property necessary to perform its obligations and duties to the State, without legislative authority." Justice Miller observes: "For this he cites some ten or twelve decided cases in England and in this country."

In elucidation of the principle, the chancellor, at p. 399, says: "The principle is that where a corporation like a railroad company has granted to it by charter a franchise intended in large measure to be exercised for the public good, the due performance of those functions being the consideration of the public grant, any contract which disables the corporation from performing those functions * * * is a violation of the contract with the State, and is void as against public policy."

A leading case on the subject is *Northern Pacific R. Co.* v. *Smith*, 171 U. S. 260, 18 Sup. Ct. 794, 43 L. Ed. 157-8.

The authorities sustain the proposition that the approach to a bridge, being an essential and inseparable part of it, cannot be dissevered, since that would deprive the public service corporation of the means of performing a nondelegable duty which it owes to the public. *Pittsburg, &c. R. Co.* v. *Dodd,* 115 Ky. 175, 210-11, 72 S. W. 822, 74 S. W. 1096; 3 Dillon on Mun. Corp., sec. 1678, note 1; Clark on Corp. (Hornbook Ser.), sec. 68, cases cited in note 73; *Hast* v. *Railroad Co.*, 52 W. Va. 396, 402, 44 S. E. 155.

For these reasons we are of opinion that the decision of the hustings court upon both assignments of error is right and should be affirmed.

*Affirmed.*