# CHARLESTON.

## CROTTY *v.* EAGLE'S ADM'R.

Submitted January 28, 1891.—Decided March 19, 1891.

1. ATTORNEY AT LAW—ADMINISTRATORS AND EXECUTORS—AC-COUNTS—INFANTS—PROCHEIN AMI.

   Where infants sue in equity by a *prochein ami* to compel an administrator to settle his accounts as such administrator of an estate in which they are interested as distributees, and such *prochein ami* employs an attorney to represent their interests, such attorney can not bind said infants by an agreement signed by himself or by another attorney authorized by him to waive proof of the vouchers and accounts presented by said adminis-trator in the settlement of his administration accounts, or to allow commissions to such administrator which are not allowed by statute.

2. ATTORNEY AT LAW.

   Where an attorney has been employed to prosecute a suit, in the absence of direction from his client he can not delegate his authority as such to another attorney.

3. ATTORNEY AT LAW.

   An attorney at law can not by an agreement *in pais* commute the debt of his client, or compromise his suit, without express authority so to do.

4. ADMINISTRATORS AND EXECUTORS.

   It is the duty of an administrator to protect the estate of his decedent by interposing every legal defence, and he can not by an agreement *in pais*, where infants are concerned and are made parties, either obtain commissions as administrator, to which he is not entitled by statute, or provide for the allowance of claims against said estate without proof of their correctness and validity.

*T. B. Swann* for appellant.

*J. M. McWhorter* for appellees.

ENGLISH, JUDGE :

This suit was brought by C. P. Crotty and others against Thomas B. Swann, administrator of the estate of Stewart Eagle, deceased, in the Circuit Court of Kanawha county, for the purpose of obtaining a settlement of the account of said

administrator, and a disbursement of the assets in his hands among the distributees entitled thereto.

The plaintiffs in their bill allege that in the year 1857 the said Stewart Eagle recovered a judgment in the County Court of Kanawha county, Va., against the James River & Kanawha Company for the sum of five thousand and four hundred dollars; and that before any money was realized upon said judgment the said Stewart Eagle died, and on the 9th day of April, 1866, said Thomas B. Swann qualified as the administrator of his estate; that the said Thomas B. Swann had, as attorney, obtained said judgment, and was to have one half of the recovery, and was to pay the expenses or costs attending said suit outside of the costs following the suit, and said Stewart Eagle was to get half that might be recovered; that shortly after his qualification as such administrator said Swann recovered or received as attorney several large sums of money on said judgment—about October 11, 1867, one hundred and eighty three dollars and fourteen cents, January 11, 1868, one thousand eight hundred and twenty three dollars and seventy one cents, January 28, 1868, one thousand eight hundred and twenty three dollars and seventy cents, and February 18, 1868, one thousand seven hundred and ninety four dollars and six cents, aggregating five thousand and six hundred and twenty four dollars and sixty one cents; that one half of said recovery should have gone into the hands of said Thomas B. Swann as assets of the estate of Stewart Eagle, deceased, to be administered in payment of his debts, and the residue of said half should have been disbursed among the heirs or distributees of said Stewart Eagle; that said Stewart Eagle died intestate and unmarried, and among his legal heirs were two infant children, Ada Eagle and Edward Eagle, who sue by their next friend, C. P. Crotty.

The plaintiffs further allege that it has been many years since the administrator received said funds; that very little has been paid the plaintiffs; and that no settlement of the administration account has ever been made; and they pray that said administrator may be required to settle his accounts, showing what money he has received for said estate,

what disposition he has made of the same, and what he still has on hand, and that he be required to disburse the same with its accrued interest to the distributees, *etc.*

On the 17th day of July, 1886, this cause was ordered to be heard together with the case of *Stewart Eagle's Adm'r* v. *Aaron Stockton's Adm'r et als.*, and both causes were referred to a commissioner to ascertain and report (1) what amount of money T. B. Swann had collected as administrator of Stewart Eagle, deceased, what disposition he had made of the same, and what amount, if any, was still in his hands as administrator, and to whom it was due; (2) should said commissioner find that the funds due were payable to the distributees of Stewart Eagle, he should report a distributee account showing what had been paid to each, and what is due to or from each distributee of said estate, and any other matter deemed pertinent, or required by any party to the cause.

The report in pursuance of said decree appears to have been made by J. W. Kennedy, special commissioner; and the clerk certifies that a writing attached to said report is in the words and figures following, to wit: "To Commissioner J. W. Kennedy, Esq.: Henry A. Eagle and others *v.* Stockton and others, in chancery, Kanawha Circuit Court; and Eagle's Heirs *v.* Eagle's Adm'r and others, in chancery, Kanawha Circuit Court. It is agreed that the fifteen *per cent.* fees to J. S. Swann provided for in the papers filed in this cause are subject to credits shown by vouchers filed for fees paid other attorneys in the controversy with C. M. Deem in Greenbrier Circuit Court. And it is further agreed that the administrator's commissions to adm'r of Stewart Eagle, as claimed, shall be allowed him; and the fifteen *per cent.* fees are also to be charged with John S. Swann's personal expenses to Greenbrier; and it is admitted that the vouchers and accounts filed before Commissioner Kennedy by the adm'r of Stewart Eagle are correct, and proof thereof is waived;" which agreement was signed: "Eagle's Heirs and Distributees, by J. McWhorter, Att'y, per L. E. McWhorter, Att'y. T. B. Swann, as Adm'r of S. Eagle; and J. S. & T. B. Swann, John S. Swann, and T. B. Swann. Dated Charleston, W. Va., Oct. 10, 1888."

On the 17th day of January, 1889, said special commissioner, Kennedy, filed his report in the case of Stewart Eagle's Distributees *v.* Stewart Eagle's Administrator, in which he says:

"Thomas B. Swann, administrator of Stewart Eagle, deceased, appeared and filed his vouchers from No. 1 to No. 86, before me; and the parties also filed before me an agreement that said vouchers and accounts are correct, and that proof thereof shall be waived (see vouchers and accounts and agreement). Said agreement also provides that the fifteen *per cent.* fee to J. S. Swann provided for in the papers in this cause is subject to credits shown by vouchers filed for fees paid to other attorneys in the suit with C. M. Deem in Greenbrier Circuit Court; and, further, that said Swann, adm'r shall be entitled to his administration commissions, and that the fifteen *per cent.* fees shall also be charged with J. S. Swann's personal expenses to Greenbrier, and that no other evidence than the above was placed before him. Said commissioner then finds, in pursuance of the first requirement of said decree:

*First.* That the net amount of money collected by T. B. Swann as administrator of Stewart Eagle, deceased, as shown by said vouchers and accounts filed before him was the sum of.......................................................................$2,618 12

*Second.* The said sum of $2,618.12 was disposed of as follows: The said Swann paid out by way of costs incurred in a suit between said heirs and C. M. Deem in the Greenbrier Circuit Court the sum of...............$308 96

Also fifteen *per cent.* to J. S. Swann, att'y in said Deem Case ...................................................... 346 07

Also the administration commission on the said sum of $2,618.12 amounts to..................................... 130 96

        Total paid out.......................................................... 785 99

Leaving to be divided among the heirs and distributees the net amount of............................ .................................. $1,832 13

One fourth of which goes to each distributee as follows:

To Wm. Eagle......... ........................................................ $ 458 03

    Henry Eagle................................................................ 458 03

    B. F. Eagle.................................... ................................ 458 03

    C. P. Crotty................................................................. 458 04

"(2.) As to the second requirement, I report the follow-

ing amounts paid to the distributees, respectively, and the amounts due to them, respectively:

| | | |
|---|---:|---:|
| The amount due Wm. Eagle as above...................................... | $ 458 | 03 |
| Amounts paid him as shown by vouchers...............$127 25 | | |
| Amounts paid C. P. Crotty, guardian for his children   315 42 | | |
| Total paid.................................................. | 442 | 67 |
| Leaving due.................................................. | $   15 | 36 |
| Add interest from 1872........ ............................. | 15 | 00 |
| Total due Wm. Eagle's share............ ................... | $   30 | 36 |
| Amount due Henry Eagle as above.................................... | $ 458 | 03 |
| Amount paid him................................................. $ 50 00 | | |
| Amount paid C. P. Crotty, his assignee.................   16 66 . | | |
| Total paid.................................................. | $   66 | 66 |
| Leaving  due........................................................ | $ 391 | 37 |
| Add  interest 1872.................................................... | 376 | 24 |
| Total due Henry Eagle's  share............................. | $ 767 | 61 |
| Amount due B. F. Eagle........... ....................................... | $ 458 | 03 |
| Amount paid........................... ..................................... | 980 | 00 |
| Overpaid........................................................................ | $ 521 | 97 |
| Amount due C. P. Crotty as above...................................... | $  458 | 04 |
| Amount paid................. .............................................. | 402 | 42 |
| Leaving due..........................     .  ...................................... | $   55 | 62 |
| Add interest 1872.............................................................. | 53 | 00 |
| Total due C. P. Crotty's share................................. | $ 108 | 62 |

"The above amount due Henry Eagle's share—namely, $767.61—goes to C. P. Crotty and B. F. Eagle, as assignees, in the following proportions: To C. P. Crotty, $367.48; to B. F. Eagle, $400.13.

"Included in the payments above from T. B. Swann to B. F. Eagle is an amount of $675.08, agreed by said Eagle to be paid to said Swann for a tract of land (see voucher contract) which said Eagle agreed to purchase from said Swann.   Respectfully submitted, J. W. KENNEDY, Special Commissioner."

· Numerous exceptions were indorsed on said commissioner's report by T. B. Swann in his own right and as administrator of S. Eagle, deceased, and by J. S. and T. B. Swann, all of which are based upon the allegation that said report

does not carry out the agreement of the 10th of October, 1888, filed in the cause with said report, between said administrator and the parties by their counsel and in person, and also because said account was not made out by J. W. Kennedy, but by Wm. Lohmeyer, who did not have before him the agreement upon which the report ought to have been made.

On the 25th day of June, 1889, said Thomas B. Swann filed his answer to the plaintiff's bill, in which he asks that his answer in the case of *H. A. Eagle et al.* v. *H. Stockton et al.*, together with his accounts therewith filed, be read as a part of his answer, alleging that the agreement of J. S. and T. B. Swann for fees with Eagle in his suit with the James River & Kanawha Company is fully set out in and with said answer; but he does not file a copy of said answer as an exhibit. He further alleges that neither J. S. nor T. B. Swann ever agreed to pay one dollar of costs for S. Eagle in any of his suits, and that in their engagements for fees with S. Eagle they were entitled to and owned one half of the judgment for five thousand and four hundred dollars recovered by *S. Eagle* v. *James River & Kanawha Company*, and that subsequent litigation to make it availing was subject to the burden of mutual costs equally to be borne by the shares of each in the judgment for five thousand and four hundred dollars; that as administrator his disbursements exceeded his receipts by over one thousand and five hundred dollars, not counting his interest; besides, the estate of A. Stockton was indebted to him one thousand dollars, with interest since 1868, as is fully set out in an order and assignment from J. M. Laidley to T. B. Swann, all of which appears in the file of *Deem* v. *Stockton* in United States Court; but he does not exhibit said order or assignment with his answer.

He then details the facts in regard to the litigation with C. M. Deem in the Circuit Court of Greenbrier county and in this Court, and its compromise; also as to the litigation with the James River & Kanawha Company, and the litigation necessary to enforce the collection of the judgment after it was obtained; and also states that he paid S. A. Miller two hundred and fifty dollars for his services in the

case. He also alleges that he furnished to Commissioner Kennedy, on the 3d of March, 1888, a true account of his administration of said estate, in writing, which said commissioner returned with his report, a copy of which is exhibited with said answer.

He then recites the terms of said agreement, and alleges that it was agreed in writing, signed by him and counsel for complainants, and returned with said report, admitting that said account was in all things correct, and should be so reported and allowed, and yet Commissioner Kennedy forgot to give this important paper to the stranger William Lohmeyer, whom he got to make up this account, who in its absence failed to credit him with items covered by said agreement in writing, aggregating, without interest, largely over one thousand five hundred dollars; and he prays that a decree may be made in his favor against said heirs, to whom he paid more money than they were entitled to receive.

This answer was excepted to by the plaintiffs because the exhibits referred to were not filed with the answer, no depositions were taken in the case, affidavits were filed by T. B. Swann, J. W. Kennedy, J. M. McWhorter, and L. E. McWhorter in reference to their understanding of said agreement, its meaning and intention, and as to L. E. McWhorter's authority to act in executing the same; and on the 10th day of July, 1889, a decree was rendered in said cause, confirming said report of Commissioner J. W. Kennedy, overruling all of the exceptions thereto, and directing disbursements to be made by said Thomas B. Swann as administrator in accordance with the findings of said report. From this decree this appeal was obtained.

The appellant appears to rely greatly upon the agreement of October, 1888, signed "Eagle's Heirs and Distributees, by J. McWhorter, Att'y, per L. E. McWhorter, Att'y," on the one part, and T. B. Swann, as administrator of S. Eagle and in his individual capacity, and also by J. S. and T. B. Swann; and his first exception to the commissioner's report is because it does not carry out this agreement. He also excepts to the report because the same was not made out and prepared by J. W. Kennedy, to whom the cause

was referred, but by William Lohmeyer, who did not have before him this agreement upon which the report ought to have been made. The report, however on its face appears to have been made out and signed by J. W. Kennedy, special commissioner, and he states in said report that Thomas B. Swann, administrator of S. Eagle, deceased, appeared and filed his vouchers from No. 1 to No. 86 before him, and that the parties also filed before him an agreement that said vouchers were correct, and that proof thereof should be waived; and that said agreement also provided that the fifteen *per cent.* fee to J. S. Swann, provided for in the papers, was subject to credits shown by vouchers filed for fees paid to other attorneys in the suit with C. M. Deem in Greenbrier Circuit Court; and further that said Swann, administrator, should be entitled to his administration commissions, and that the fifteen *per cent.* fees should also be charged with J. S. Swann's personal expenses to Greenbrier.

Was this agreement such a paper as, in the absence of all other evidence, would authorize said commissioner to settle said administration account as he did? Among the plaintiffs in this case were two infant children, Ada Eagle and Edward Eagle, who sued by their next friend, C. P. Crotty, and who were interested in the distribution of this estate. It is the pecular province of a court of equity to protect the interests of infants and we could not say that, if they had signed this agreement in person, it would have been binding upon them. Is it any more obligatory signed, as it was, by their attorney by another attorney?

In Ewell's Leading Cases on Infancy, in the notes to the case of *Mills* v. *Dennis,* 235, (3 Johns. Ch'y 367) it is said: "No decree can be taken against a minor on his own admissions or those of his guardian *ad litem,* (except, perhaps, on admissions evidently for the benefit of the infant;) but as against him every allegation of the bill or petition must be duly proved."

In Bingham on Infancy, page 10, note 2, it is said: "Infants many avoid the sale of their lands or any contract or agreement to surrender or release their rights for which they are entitled to an equivalent, because it is a presump-

tion of law that infants have not sufficient discretion to put a just value on their own rights." *Baker* v. *Lovett*, 6 Mass. 78.

In 5 Port. (Ala.) 393, in the case of *Isaacs* v. *Boyd*, the court, in speaking of the duties of a *prochein ami*, says : "The duties of a *prochein ami* and his power are comprised within a very narrow compass. He may prosecute a right for an infant, but he can do nothing which can operate to its injury. He can, it is true, dismiss a suit because he is himself liable for costs, though even this may be well questioned when injury to the minor would be the result. A *prochein ami* is one admitted by the court to prosecute for the infant, because otherwise he might be prejudiced by the refusal or neglect of his guardian. 10 Petersd. Abr. 579, note. He is in fact but a species of attorney, who is permitted to act for the infant so far as to conduct his suit, but he has certainly not a more extensive authority than an attorney at law, who can not enter into a bond, or compromise the right of his client. *Holker* v. *Parker*, 7 Cranch, 436."

In the case of *Smith* v. *Lamberts*, 7 Gratt. 142, DANIEL, J., delivering the opinion of the court, says : "In some of our sister states the relation of client and attorney has been held to confer upon the latter the authority even to compromise, compound, or commute demands of the former confided to him for collection. The general doctrine, however, so far as I have had it in my power to collect it from a review of the decisions, is that the attorney has no right to commute the debt of his client, to release the person of his debtor when in prison by virtue of a *ca. sa.*, or to enter a *retraxit* in a suit to execute a release, or to do any other act which destroys the cause of action without receiving payment."

Webster defines "commutation" as follows : A substitution of a less thing for a greater, especially a substitution of one form of payment for another, or one payment for many, or a specific sum of money for conditional payments or allowances *etc.* Now in the case under consideration, although there was a suit pending in the Circuit Court of Kanawha county in which the heirs at law of S.

Eagle, deceased, were plaintiffs and Thomas B. Swann, as administrator of said Eagle's estate, was defendant, said agreement does not appear to have been made a matter of record, but appears from the affidavit of T. B. Swann to have been executed *in pais*, and not by the attorney employed in the cause, but by his son, L. E. McWhorter, who signed the agreement, "Eagle's Heirs and Distributees, by J. McWhorter, Att'y, per L. E. McWhorter, Att'y." "An act *in pais* is literally an act in the country, but the phrase is technically used to express any act which is not a matter of record, or done in a court of record." 2 Bl. Comm. 294. An agreement of this character could not have been made by the attorney who was employed and had control of the case, much less could it have been made by delegated authority from the attorney employed.

Story on Agency (section 13) says: "For a like reason one who has a bare power or authority from another to do an act must execute it himself, and can not delegate his authority to another; for this being a trust or confidence reposed in him personally, it can not be assigned to a stranger, whose ability and integrity might not be known to the principal, or who, if known, might not be selected for such a purpose. * * * The same rule applies to a broker; for he can not delegate his authority to another to sign a contract in behalf of his principal without the assent of the latter. The reason is plain, for in each of these cases there is an exclusive personal trust and confidence reposed in the particular party, and hence is derived the maxim of the common law : *Delegata potestas non potest delegari.*"

In this case, a portion of the plaintiffs, being infants, could give no consent, and could only sue and employ counsel by their next friend ; and, as we have seen, a *prochein ami* can do nothing that will operate to the injury of those he represents. The effect of this agreement violates this principle by allowing commissions to the administrator, which the plain provisions of the statute would prevent him from obtaining.

It is admitted that the vouchers and accounts filed before Commissioner Kennedy by the administrator of Stewart Eagle were correct, and waived proof thereof, and fixed the

fees of J. S. Swann at fifteen *per cent.*, subject to credits for fees paid other attorneys in the controversy with C. M. Deem in Greenbrier, and also subject to the personal expenses of said J. S. Swann in going to Greenbrier. These matters should have been established by proof, and neither the *prochein ami* nor the attorney employed by him had the right or authority to waive such proof; neither could the attorney for the adults waive such proof unless expressly authorized so to do by them.

The action of the attorney who signed this agreement was equivalent to an actual arbitration of the matters in litigation, and dispensed with proof which would have otherwise been required by the commissioner. In this the attorney exceeded his powers, even if the attorney retained in the case could have delegated to him authority to execute such a paper.

In the case of *McGinnis* v. *Curry*, 13 W. Va. 48, GREEN, J., in delivering the opinion of the court says: "While I have found no case deciding that an attorney has a general authority to submit his client's controversies to arbitration, there are cases in which it has been decided that he does not possess such authority. See *Jenkins* v. *Gillespie*, 10 Smedes & M. 31; *Scarborough* v. *Reynolds*, 12 Ala. 252. It is true that these were cases in which there was no *lis pendens*. But it seems to me that, as it is held that an attorney by reason of his being employed to instute a suit or defend a threatened one has no authority to submit, by an agreement *in pais* signed by the attorney, the case to arbitration, that it must follow that he has no such authority, though the suit is pending. An authority to act *in pais* could only be inferred if it exist from his employment before the institution of the suit as an attorney; and such employment, we have seen, confers no such authority. This conclusion is not at all inconsistent with the numerous cases deciding that an attorney has authority in a pending suit by an order of court to submit the cause to arbitration."

In the case before us the agreement which the administrator relies upon did not submit the matters in controversy to arbitration, but went further, and disposed of the matters of difference. The agreement, on the other hand, was

signed by the administrator, whose plain duty under the law was to protect the estate of his intestate, and interpose every legal defense in his power to prevent encroachment upon it; and, such being the case, a court of equity would not uphold and enforce an agreement made by him which passes upon and determines the correctness and validity of the receipts and vouchers taken by him in the discharge of his duty as such administrator, and which are presented to the commissioner for the purpose of showing he has fully administered the estate, and is entitled to be discharged from liability as such.

My conclusion, then, is that the said agreement is invalid, and the report of said commissioner, having been made in the absence of parol proof, and having been based to a considerable extent upon the admissions and waivers contained in said agreement, the decree confirming said report and adjudicating the cause in accordance with the findings of said commissioner must be reversed.

But as the adult plaintiffs have assigned no errors, and are not complaining of said decree, and they appear to have assented to a portion of the vouchers presented to said commissioner by said administrator, and they not having excepted to said report, the cause is remanded to the Circuit Court of Kanawha county for further proceedings to be had therein, with directions to allow such portions of the vouchers, receipts and accounts presented by said administrator as have been assented to by the adult distributees of said estate, except so far as they affect the interests of the infant parties, and to allow said administrator commissions on the portion of said estate represented by said adult parties only, and it is ordered that Thomas B. Swann do pay the costs of this appeal.

REVERSED IN PART.   REMANDED.