# CHARLESTON.

CAMPBELL *v.* O'NEILL *et al.*

Submitted June 11, 1910.     Decided April 4, 1911.

1.  TRUSTS—*Express Trusts—Enforcement—Variance.*
    If an express trust, admitted and declared in the answer of a defendant, be substantially the same as that alleged in the bill, it will be enforced according to its terms, though the trust so declared differ in form or details from the trust alleged. (p. 467).

2.  FRAUDS, STATUTE OF—TRUSTS—*Express Trusts—Statute of Frauds—Pleading Defense—Waiver.*

    Such an express trust relating to land, though unenforceable under the statute of frauds in the State of Iowa where the land is situated, is not void; and if in a suit brought in this State to enforce such trust, respecting the proceeds of the sale of such land, the trustee in his answer admits and declares such trust, not relying therein on the statute of frauds, he will be treated as having waived the benefits of the statute of frauds, and the trust enforced. (p. 467).

3.  TRUSTS—*Enforcement—Defenses—Limitations.*

    Laches or the statute of limitations constitute no defense in a suit in equity to enforce the provisions of an express trust, except under such circumstances as would render it inequitable to enforce the same. (p. 468).

4.  GUARDIAN AND WARD—*Estate—Action to Recover—Limitations—Laches.*

    A ward is not barred in equity by laches, or the statute of limitations, from recovering his estate from his guardian. (p. 468).

5.  SAME—*Accounts—Settlement—Disbursements Beyond Income.*

    The guardian of an infant in settlement of his accounts is not entitled to credit, or to be reimbursed out of the principal of his ward's personal estate, for disbursements beyond the income from his personal estate, and the rents and profits of his real estate without previous order of the court. (p. 469).

6.  SAME—*Disbursements—Collegiate Education.*

    Disbursements by guardian beyond the income of his ward's estate for necessaries furnished him, without the previous order of the court, and for which he may be credited in settlement, or be reimbursed out of the principal of the ward's personal estate, do not include disbursements for collegiate education of such ward. (p. 470).

7.  SAME—*Guardian De Facto—Accounting.*

    Although one not legally appointed and qualified as such, but acting as guardian of an infant, can not be required to account by or before a commissioner of accounts, or by a court of probate of this state, yet in a court of equity he may be required to account in the same way as if he had been duly appointed and qualified as such guardian. (p. 470).

    BRANNON, JUDGE, Absent.)

Appeal from Circuit Court, Hancock County.

Action by Abbie Campbell against Mary O'Neill and others.

From a judgment in favor of plaintiff, defendant John A. Campbell appeals.

*Affirmed.*

*Alfred Caldwell, John R. Donehoo, John A. Campbell* and *Henry M. Russell,* for appellant.

*Oliver S. Marshall* and *John Marshall,* for appellee.

MILLER, JUDGE:

This is an appeal by defendant from two decrees of the circuit court against him in favor of plaintiff, the first, pronounced November 18, 1904, adjudicating the principles of the cause, and referring the same to a commissioner to state an account between them in accordance therewith; the second, pronounced November ——, 1908, overruling defendant's exception to the commissioner's report, confirming it, and adjudging that plaintiff recover of defendant the sum of two thousand one hundred and forty-nine dollars and fifty cents, the aggregate of principal, as found by said commissioner, arising from sales of real estate by defendant, money collected by him on a policy of life insurance on the life of plaintiff's father, with interest from March 1, 1906, together with her costs incurred in the prosecution of her suit.

Plaintiff, an infant, by her next friend, sued defendant in his own right, and as guardian *de son tort,* for an accounting of her share of the moneys received by him from sales of lands in the State of Iowa, one hundred and sixty acres whereof, residue of a tract of five hundred and twenty acres, originally purchased at a tax sale by her father, M. B. Campbell, in 1862, it is alleged belonged to her father, and of which in 1886 he died seized and possessed; and another portion whereof, it is alleged, was in 1866 conveyed by her father to his mother and the mother of defendant, plaintiff's grandmother, and of which in 1869 she died seized and possessed, intestate, leaving surviving her Alexander Campbell, her husband, and the said M. B. Campbell, John A. Campbell, and Mary Brandon, her two sons and daughter, who inherited said land and possession of which, on the death of said Alexander, occurring in 1884, came to them jointly, the share of her father therein, on his death, intestate, in 1886, descending to plaintiff and her three sisters, named as co-

defendants in the bill; the other portion of said five hundred and twenty acres, as the bill alleges, having been conveyed by said M. B. Campbell in his life time to said John A. Campbell.

It is further alleged in the bill that after said land had been so acquired, and conveyed, and after the death of plaintiff's father, the defendant John A. Campbell, assuming to own all of said land, leased the same, collected the rents thereof, and proceeded to sell and dispose thereof, and had, at the time of the bringing of this suit, disposed of all of said land to various persons, named in the bill, for an aggregate sum, in which the share of plaintiff and her sisters, as heirs of their father, in the principal amounted to eight thousand three hundred and forty one dollars.

The allegation of the bill, respecting said insurance money is, that after the death of plaintiff's father, defendant assumed the guardianship of herself and her sisters, then all infants, collected said life insurance money, amounting to two thousand two hundred dollars, and representing himself to be their guardian, had collected and held all the moneys belonging to them, but had never rendered any account thereof, as such, as required by law, and a full accounting whereof is sought by the bill.

The defendant in his answer, not denying the material facts charged, alleges, in reply, respecting said lands, that he, and not M. B. Campbell, was the purchaser of said land, at said tax sale, but that he, being then under age, took title thereto in the name of his brother; but that afterwards, the validity of said tax title being questioned, he, in 1869, obtained an assignment of a mortgage on said land, executed by one Leroy R. Tuttle, prior to said tax sale, and by means of which, and the release thereof to the said Tuttle, he obtained from said Tuttle and his wife a deed for said land investing in him the absolute ownership of said land, of which he alleges said M. B. Campbell had full knowledge and notice in his life time, and consented thereto. He disclaims all knowledge, until the filing of the bill in this cause, of the deeds of conveyance from M. B. Campbell to himself and Eleanor Campbell of portions of said land, and alleges that no deed was ever delivered to him for the part so conveyed to him.

While asserting absolute title in himself, by virtue of the

Tuttle deed, defendant admits in his answer, declaratory of and defining the trust in relation thereto: First, that at the time of the tax sale and purchase of said land in 1862, it was agreed and understood between him and said M. B. Campbell, that the persons who should be interested therein, and for whom the same should be held as joint tenants, were M. B. Campbell, in the proportion of an undivided two sevenths; John A. Campbell, in the proportion of an undivided three sevenths therein, and that the remaining undivided two-sevenths interest therein should be held for their mother and sister, referring to the said Eleanor Campbell, and the said Mary Brandon, their sister, the interest of the latter being subject to some contingencies, not definitely stated. Second, that from the time he became the owner of said lands, and until the death of said M. B. Campbell, he recognized the fact that the latter was entitled to the proceeds of the sale of an undivided two sevenths of said land, when sold, less prior costs and charges incident to perfecting the title: Provided, first, "that the contingent liability as to the mortgage indebtedness, assigned to this defendant as aforesaid, should be satisfied, if feasible and demanded;" second, "that the said M. B. Campbell would pay off and discharge the two hundred dollars alleged to have been procured by defendant for him," as his proportion of the expenses incurred in perfecting said title, which was the consideration for his interest in said land.

The answer further avers that neither M. B. Campbell in his life time, nor his heirs since his death, ever paid the money so procured for him by defendant, and that the defendant had since discharged the same, and that he and they had therefore forfeited any and all rights, under the terms of the trust, to participate in the proceeds of the sale of said land, or in the rents and profits thereof.

The answer admits receipt by the defendant of the $2,000.00, collected on said insurance policy, and that he had received the same from the administrator of M. B. Campbell, supposing that he had been regularly appointed guardian for the said infants, but finding that he had not been so appointed, he denies liability to plaintiff, averring that his liability, if any, is to the administrator, from whom he received the same, and not to plaintiff. But in his answer, and also in his testimony, defendant admits that he took charge of the persons and property of

said infants, cared for them as guardian, made disbursements to them out of the rents and profits of the land and the proceeds of the sale thereof, and from the money collected on the insurance policy, for their maintenance and education, various sums, amounting in the aggregate to more than their interests therein, and particularly more than the interest of the plaintiff therein would have amounted to, had her father, said M. B. Campbell, complied with the conditions of said trust, as declared by defendant, and that she is now actually indebted to him, and not he to her, if a proper accounting be had.

These latter allegations are of course defendant's interpretation of the law applicable to the facts. It becomes our duty, however, to apply the law to those facts, harsh though it sometimes is, and as it seems to be in this particular case. We accept with entire confidence the professions of good faith, and fair dealings by the defendant with these infant children of his brother, known as he is to all of us, to be a man of high character and standing; but the duty we have to perform, in reviewing the judgment or decree of the court below is, to apply the law to the facts, being as liberal therein as the facts will justify.

The record shows that the three sisters of the plaintiff have long since reached their majority, and that some settlement has been effected between the defendant and them, of the matters relating to this controversy. The plaintiff, who began this suit by her next friend, has since reached her majority, and the suit was ordered, and did proceed, to final decree in her name individually.

As expressive of our own conclusion as to the facts we quote, substantially, from the opinion of the learned judge of the court below, as follows: "The parties to this controversy became interested in the Iowa lands through Alexander Campbell, the father of Milton B. and John A. Campbell. Alexander Campbell traded his store in Fairview to A. R. McCown, for a note made by Owen Bros. of Omaha, Nebraska, endorsed by A. R. Tuttle and C. B. Smith, for over $3200.00. The note not being paid, Alexander Campbell was compelled to make an assignment to Alex. Morrow, and this note passed to his assignee. Owens then conveyed to Tuttle the five hundred and sixty acres in question in this suit, and Tuttle made a new note to take

up the first one. This second note was for over thirty eight hundred dollars, and was secured by mortgage on the land conveyed to him by Owens. It will be seen from these transactions that Alexander Campbell furnished the real consideration for these lands, and that the payments which were subsequently made by M. B. and J. A. Campbell were but incidental matters, necessary to secure and save the estate of Alexander this large sum which had been put into these lands. To me it is clear, beyond question, that what was done by M. B. Campbell, in taking the tax titles in his own name, was done to protect the investment already made, and that in holding these tax titles he held as trustee; and that what was done by J. A. Campbell, in securing the Tuttle deed to himself, was as trustee for the same interests. This conduct of the business, through the agency of these trustees, was made necessary by the insolvency and indebtedness of the father. Therefore when the tax titles were bought in it was done in the name of M. B. Campbell, and when the Tuttle title was acquired, it was done in the name of J. A. Campbell. It is obvious that in neither case was there any intention of securing the property for the exclusive use of the person to whom the title was conveyed. The defendant, J. A. Campbell, had Morrow, the assignee, transfer to him the note and mortgage, given to the assignee, by Tuttle; and this was done without any consideration passing from J. A. Campbell to the assignee; and the satisfaction of this mortgage was the sole consideration for the deed from Tuttle to J. A. Campbell. To say that J. A. Campbell accomplished this transfer with the purpose and intention of holding these lands as his own, and of asserting the title thus acquired, adversely to the claims of others interested, is to charge him with perpetrating a fraud on those others, and with a serious breach of trust, and a total disregard of the moral obligation arising out of the transaction. Yet this is the necessary effect if we allow the contention that this land was acquired and held by adverse title. This, however, was not the case. The Tuttle title was acquired by J. A. Campbell, as was the tax title by M. B. Campbell, pursuant to a trust arrangement, by which M. B. Campbell was to have two-sevenths of the land, Eleanor, the wife of Alexander, the two-sevenths, and J. A. Campbell, the three-sevenths. This is a conceded fact in the

case, and as a fact it disposes of the claim of adverse possession and of rights of property resulting therefrom."

On the question of the non-compliance by M. B. Campbell with the condition of the trust, declared by the defendant, we think that the judge below, in his opinion, properly concluded, that there is no real force in this contention, for the reason stated, that M. B. Campbell did furnish the money, by borrowing it from his aunt; besides, it is a disputed fact whether that money was not in fact paid out of the estate of M. B. Campbell, after his death, by the payment by his administrator of a three hundred dollar note. Whether this be the fact or not, the payment by the defendant in the manner claimed, was voluntary on his part, and can not lawfully be set up by him to defeat the interest of his brother in the property. Moreover, the subsequent acts of the defendant, in recognizing the rights of his brother in this land, and in the proceeds of the sale thereof, in distributing and paying to his heirs portions of the money realized from rents and profits, and from sales thereof, are rather inconsistent with the position now taken that M. B. Campbell had forfeited his interest in the property, by not complying with the said condition.

The decree below, predicated on these facts, and adjudicating the principles of the cause was, that the lands described in the bill and answer, were acquired and held by defendant John A. Campbell, in trust, in the proportion of two-sevenths thereof to M. B. Campbell and his heirs, two-sevenths to the use of Eleanor Campbell and her heirs, and three-sevenths to the use of the said John A. Campbell, and that the plaintiff Abbie Campbell, as one of the four heirs of Milton B. Campbell, and one of the heirs of the said Eleanor Campbell, was entitled to an accounting with the defendant of the said trust, and also of the money which went into his hands as a part of the insurance on the life of her father.

With respect to the claim of defendant, that the interest of Eleanor Campbell in the trust property was a contingent one, and that it was agreed between the parties that her two-sevenths interest, in case of her death, was to go to Mrs. Brandon, the court below says, that the only evidence in support of this contention is that of the defendant and Brandon, her husband, which is incompetent. Does not the fact also that M. B. Camp-

bell in his life time deeded a portion of the land to Eleanor Campbell absolutely, without such condition, and while he held title to the land, not only for himself, but for the defendant and Eleanor Campbell, amount to a denial of any such agreement? It is not claiemd that Eleanor Campbell was a party to the alleged agreement, that her interest was to go to her daughter, Mrs. Brandon. Possibly that would have been an equitable disposition of the property. So far as the record shows she died intestate, and we cannot say that the decree below, respecting her alleged interest, is erroneous.

The decrees below are attacked on numerous grounds. We will notice only such of them as seem to us meritorious and as presenting questions fairly arising upon the record. First, in logical order, it is said that the trust alleged in the bill is not the same as that acknowledged and declared in the answer; and that the trust so declared by the defendant, being an express trust, is by the laws of Iowa, the statute of frauds, wholly void and unenforceable. Our reply to this proposition is that the trust alleged in the bill, while differing in details, and in the manner of statement, from that acknowledged and declared in the answer, is nevertheless substantially the same. We do not regard the fact that after the land was acquired by tax title, and the title thereto invested in M. B. Campbell; and the fact that he subsequently made deeds to the defendant and to Eleanor Campbell, as alleged, and that the parts so conveyed may have been held in severalty, and the further fact that defendant subsequently acquired from Tuttle a deed for the whole land, to be made to him, and which was to be subject to the same trust, render the defendant any the less liable as trustee, to account to the plaintiff for her interest therein, for we must assume that in the attempted partition of said land by the deeds from M. B. Campbell to his mother Eleanor, and to his brother John A. Campbell, the purpose was to divide the land, according to quality, and quantity, in the same proportions in which it was held by him for himself and them.

We believe it to be true, as argued, that under the statute of frauds of the State of Iowa, an express trust cannot be created by parol, but must be in writing. The supreme court of that state, however, in *McCormick &c. Co.,* v. *Griffin,* 116 Iowa 397, holds, that a trust required by the statute to be in writing is not

void, but merely unenforceable, and that a conveyance by the trustee in discharge of the trust, is based on a sufficient consideration even as against strangers. In the case at bar we have the defendant in his answer filed declaring the trust, substantially as sought to be enforced against him by the bill. In Perry on Trusts, (6th Ed.) section 84, that eminent writer says, applicable we think to this case, that: "In all cases, however, the defendant *may* answer, and if in his answer he confess the trust without insisting upon the statute of frauds, he will be held to have waived the benefit of the statute, and his answer may be used as a written declaration and proof of the trust, on the ground that the plaintiff is not called upon to introduce evidence, and the trust appears upon the written answer before the court." And this Court held in *McCandless* v. *Warner*, 26 W. Va. 754, that a writing to prove a trust under our law need not be made at the time the trust is created, but may be made at any time thereafter, and that it is not necessary that it be addressed to the *cestui que trust*, or to any other person. We think if the case here depended upon such declaration that the answer of defendant satisfies the requirements of the statute, even of the State of Iowa.

A second point we will notice is, that defendant after he acquired the deed from Tuttle, took possession of the land by tenants, sold the same as his own, and in every way treated it as his individual property, and that laches or the statute of limitations bars recovery by the plaintiff. We have seen how the court below disposed of this question in part. In another part of his opinion, the judge below says, on the same question, that the Tuttle title was not a constructive, but an express trust, and that the statute of limitations can have no application thereto. We have recently held, in *Roush* v. *Griffith*, 65 W. Va. 752, points seven and eight of the syllabus, that the question, what constitutes laches barring an express trust, depends for the most part upon the circumstances of the particular case; that a ward is not barred in equity, by delaying suit to recover her estate from her guardian for a period of fourteen years after attaining her majority, unless evidence has been lost, or the trust has been disavowed, or upon some equitable principles it would be inequitable to enforce such trust. And in *Sommers* v. *Bennett*, 68 W. Va. 157, 69 S. E. 694, on the authority of numerous

prior decisions, it is said, that until an actual disseisin of a co-tenant has been effected by some notorious act of ouster brought home to his knowledge by another co-tenant, and in the case of a beneficiary under a trust, until the duties of the trustee are ended, or the trust is disavowed by the trustee, such co-tenant or *cestui que trust* cannot lose his or their rights of entry on the land, by delay in asserting the same and demanding possession. In the case here there is no evidence of any dissavowal of the trust in the life time of M. B. Campbell, and there has been no such disavowal to his heirs and beneficiaries, since his death. Quite the contrary we think; besides, no such disavowal could bar an infant of his right of action, at least until after he has reached his majority.

A third point is, that the defendant was unlawfully deprived of credits for disbursements to plaintiff, beyond her share of the rents and profits of the land, interest on the purchase money, and on her share of the insurance money, with which defendant had been charged. The commissioner's report shows an account between plaintiff and defendant of her share of these items, made up with annual rests, and as of the first day of March of each year, beginning March 1, 1886, and ending March 1, 1906, with accompanying schedules explanatory thereof, and by which defendant is charged, each year, with these items of income, and credited with disbursements, proven by his evidence to have been made to, or for and on account of plaintiff, and showing payments in excess of rents and interest received and available therefor, a balance in his favor of four hundred and fifty five dollars and seventy two cents, which the commissioner refused to allow him out of her share of the principal sums collected by him, and charged against him in said account, and which the court below by confirming said report, and giving decree against defendant, also disallowed him. Was the defendant entitled to be so credited, or reimbursed out of the principal sums with which he was charged in said account? He asserts his right to such credit on the ground that said disbursements were for necessaries furnished plaintiff, relying chiefly, on *Myers* v. *Myers,* 47 W. Va. 488. It is conceded by counsel that that case was a hard one. We think, however, that it affirms correct legal principles. It affirms, as do some of the authorities cited therein, that for necessaries furnished by a guardian to his ward,

the guardian has the same right of enforcement and re-imbursement therefor as any other persons, furnishing such necessaries. Can the claim of defendant to be reimbursed be supported upon the ground of necessaries furnished? Food, lodging, clothing, medical attendance and education are regarded as necessaries. And the authorities hold that wide discretion is given a guardian in such expenditures, depending upon the estate, and station in life of his ward. But they say that education is confined to a common school education, and does not include a college education. Woerner Am. Law of Guardianship, 12. By reference to the account, and to the testimony of the defendant in this case, we observe that many of the items cover disbursement for tuition and expenses, outside of board, while attending school or Oberlin College, Ohio, and apparently amounting to more than the amount of the excess of his disbursements. Besides sections 8 and 9, chapter 82, Code 1906, expressly disallow to a guardian in settlement, credit for disbursements for any purposes, beyond the income of the ward's estate, unless the same be previously authorized by a court, as provided thereby. Some early Virginia cases are cited by counsel to the contrary; but they are decisions occurring before the present statute was enacted in that State or in this. See *Rinker* v. *Streit*, 33 Grat. Anno. 663, and notes. Notwithstanding this statute, however, a court of equity may, upon the principles of the Virginia cases cited, and *Myers* v. *Myers*, *supra*, where it has the entire matter before it for settlement, reimburse a guardian out of the principal of the ward's personal estate, for disbursements which the law regards for necessaries. The general rule, however, is, that where expenditures of this kind have been made without a previous order of the court, some good excuse must be furnished to the court why application was not made to the court for the authority before doing so. *Bond* v. *Lockwood*, 33 Ill. 212, 224-5.

The fourth and last point which will be noticed is, that the defendant, not being the legally appointed guardian, cannot be required to account to the plaintiff, in strict accordance with the rules and principles governing a regularly appointed guardian. In this we think the authorities, without exception, are against him. He says he thought he was guardian. He received the money belonging to these infants, believing that he had been

duly appointed guardian. But if he did not so believe, still, having acted in that capacity, he is bound to account in a court of equity in the same way, as if duly appointed and qualified. Although a commissioner of accounts, and our county court of probate would not have jurisdiction over him as over a regularly appointed, and qualified guardian, to compel an accounting, nevertheless a court of equity has that power. Woerner Am. Law of Guardianship, section 94, says: "So one who acts as guardian without authority, or under an appointment void for want of jurisdiction in the court having granted it, becomes liable as a trustee *in invitum,* and may be made to account in a court of equity, or, under some circumstances, in an action of account at law for money had and received. And where such court has obtained jurisdiction in a proceeding to set aside, on the ground of fraud, a decree made on final settlement between a guardian and his ward, it may retain jurisdiction of the whole case, not only for the purpose of setting aside the fraudulent settlement and decree, but also of determining the amount due the plaintiff upon an honest accounting. So it is held, that where an administrator is also the guardian of infant distributees of the estate, chancery alone has jurisdiction to settle his accounts, though a settlement made by the Probate court in such case is not absolutely void." That *de facto* guardians may thus be required to account is the doctrine of many cases, including *Evans* v. *Pearce,* 15 Grat. 513; *Peale's Admr.* v. *Thurmond,* 77 Va. 753, and *Martin's Admr.* v. *Fielder,* 82 Va. 455. And we find this doctrine recognized and applied in some of the cases cited and relied upon by the appellant. *Houseal* v. *Gibbes,* 23 Am. Dec. 186; *Van Epps* v. *Van Deusen,* 25 Am. Dec. 516; *Bailey* v. *Bailey,* (Vt.) 48 Am. St. Rep. 830. And citing many decisions, it is said, in 21 Cyc. 152, that "Any person acting as guardian whether as a natural or statutory guardian (even though his appointment be void), or as special guardian to sell realty, or as a mere volunteer, may be required to account, and on the removal of a guardian it is a matter of course to require him to account and to pay over the balance if any which shall be found in his hands upon such accounting. It is the duty of every guardian whose trust as such is revoked to account honestly to the late ward or to his successor in the trust if there be one. If the guardian dies before the settle-

ment of his account his representatives may be required to account. If the guardian has appointed an agent to manage the estate, he may be required to file and settle an account of his agency."

It seems wholly unnecessary to say more in support of the decrees appealed from, and our plain duty is to affirm them.

*Affirmed.*