# CHARLESTON.

ORBRA HYATT *et als., By Next Friend v.* R. G. HYATT,
*Guardian et als.*

(No. 5259)

Submitted October 13, 1925.   Decided October 20, 1925.

GUARDIAN AND WARD—*Guardian Held Entitled to Credits as Against Trust Fund for Expenditures for Urgent Necessity of Wards, Regardless of Lack of Previous Authority From Court.*

A case in which the infant wards of a guardian institute suit against him charging that he has embezzled and misappropriated the guardianship funds, and asking for a decree for the money entrusted to his care.

Held: That under the facts of this particular case, the guardian is entitled to credits, as against the trust fund which came into his hands, for the sums expended by him for the urgent necessities of his infant wards, although no previous authority from the court had been given him for expending the principal of the trust fund.

(Guardian and Ward, 28 C. J. § 185.)

(NOTE: Parenthetical references by Editors, C. J.—Cyc. Not part of syllabi.)

Appeal from Circuit Court, McDowell County.

Suit by O. L. Haley, as next friend of Orbra Hyatt and others, against R. G. Hyatt, guardian, and others. Decree for plaintiffs, and defendants appeal.

*Decree reversed; remanded.*

*Harman & Harman,* for appellants.
*Joseph M. Sanders, Jr.,* and *Joseph M. Crockett,* for appellees.

LIVELY, PRESIDENT:

This is a suit in chancery instituted by O. L. Haley as next friend of his four infant step-sons, Orbra, Earle G., William

R. and Harold L. Hyatt, against R. G. Hyatt, guardian of said infants, and the surety on his guardianship bond, the United States Fidelity and Guaranty Company, charging a breach of Hyatt's fiduciary duty as guardian, in that he had embezzled and appropriated to his own use certain money belonging to his infant wards; and charging that he is an improper person to have the guardianship of said children. And praying for his removal and for judgment against him for the funds so entrusted to him. The circuit court entered a decree in favor of the plaintiffs. This appeal followed.

In the plaintiffs' bill it is alleged that after the appointment and qualification of R. G. Hyatt as guardian of his infant nephews, there was paid into his hands the sum of $1,303.72 for the benefit of said children; that sometime after Hyatt as guardian received this money, he departed from the State of West Virginia without having made settlement, and was a non-resident of this State; that he embezzled and appropriated to his own use the money so entrusted to him as guardian. The plaintiffs asked that they might have a decree for the sum of $1,303.72 against said Hyatt and his surety, the United States Fidelity & Guaranty Company, and that the court appoint some other proper person as guardian of said infants in his stead.

O. L. Haley, next friend, made an affidavit that the defendant Hyatt was a non-resident of this State, and an order of publication was entered against him.

At a later date, in open court, the plaintiffs filed an amended and supplemental bill containing much the same allegations as the original bill, and the further allegation that R. G. Hyatt had never provided for said infants or supported or educated them, or advanced any sum or sums of money to any of them or to anyone for their use, and that there were no credits due him on his account as guardian. That part of the prayer in the original bill asking for a decree for the sum of $1,303.72, was amended to include interest on that amount from Feb. 1, 1921.

The surety on Hyatt's bond as guardian, filed its answer, demanding strict proof of the allegations contained in plain-

tiffs' bill, and asking that Hyatt be required by the court to settle his guardianship accounts.

Orbra Hyatt, the oldest of the guardian's infant wards, a lad 16 years of age, filed his "answer" in open court, stating that this suit was instituted without his knowledge or consent; and denying that the defendant Hyatt, his guardian, was a non-resident of this State, and denying that Hyatt, as his guardian, had embezzled the funds belonging to infant plaintiffs herein. It was averred that O. L. Haley, the step-father, of said infants, had been very unfriendly to them, and that he was not a fit and proper person to act as their next friend. It was further alleged that Haley was then living at Danville, Virginia, and was a non-resident of West Virginia.

R. G. Hyatt, guardian, filed his answer, averring that O. L. Haley was a non-resident of this state, and was not a fit and proper person to act as next friend of said children to whom he was very unfriendly. He denied that he was a non-resident of West Virginia, and denied that he had embezzled or appropriated to his own use money belonging to his wards; and alleged that he had properly used the trust funds for clothing, supporting and maintaining said infant wards for a period of nearly four years. He also set out the circumstances surrounding his guardianship affairs, and made certain explanations of his expenditures on behalf of his wards.

Depositions were taken and filed, together with certain exhibits of plaintiffs and defendants, and by final decree entered on Aug. 9, 1924, the Circuit Court removed R. G. Hyatt as guardian and divested him of all powers, rights and duties pertaining to said office; and directed that O. L. Haley should immediately apply to the County Court of McDowell County for the appointment of a suitable and proper person as guardian for said infants. The court further decreed that plaintiffs recover from the defendants R. G. Hyatt and his bondsman, the sum of $1,303.72 and costs, to be paid to Hyatt's successor upon his appointment and qualification.

The errors relied upon for reversal are that the court erred: (1) In permitting this suit to be prosecuted in the name of O. L. Haley as next friend of the infant plaintiffs; (2) In re-

moving the defendant Hyatt as guardian of said infants, and in divesting him of all power, rights and duties pertaining to that office; (3) In directing O. L. Haley to apply to the County Court of McDowell County for the appointment of another person as guardian of said children; (4) In decreeing that the plaintiffs recover from the defendant Hyatt and his surety, the sum of $1,303.72 and costs, to be paid to the successor of Hyatt; (5) In failing to direct or permit the defendant Hyatt to make settlement of his guardianship accounts before a commissioner of accounts of McDowell County; and (6) In failing to decree that the defendant Hyatt had faithfully and fairly accounted for said sum of $1,303.72, coming into his hands as such guardian, and had properly expended the same for the care, support, education and maintenance of said four wards.

It appears from the record that on July 18, 1919, Jesse D. Hyatt, father of the infant plaintiffs, died intestate, in McDowell County, West Virginia, after having been struck and fatally injured by a passenger train of the N. & W. Ry. Co. He was survived by his widow, Rosa Hyatt, and four infant sons, namely, Orbra, Earl G., William R. and Harold. Shortly after the death of her husband, Rosa Hyatt, his widow, was appointed and qualified as administratrix of her deceased husband's estate. While acting in this capacity, there was paid to her by the N. & W. Ry. Co. the sum of $3,800, as a compromise and settlement of all claims against the Railway Company on account of her husband's death. On October 3, 1919, Rosa Hyatt married O. L. Haley, the next friend of the plaintiffs herein. It further appears that on Nov. 12, 1919, the County Court of McDowell County, appointed R. G. Hyatt, a brother of Jesse D. Hyatt, guardian of the decedent's infant children. He qualified and gave a $2,000 bond with surety. Whereupon Rosa Hyatt Haley, administratrix, paid to the guardian, the sum of $1,303.72, constituting money to which plaintiffs were entitled as heirs and distributees of their father, Jesse D. Hyatt, deceased. Upon the refusal of O. L. Haley to allow the mother to bring said children into his home upon her marriage to him, having given as a reason therefor that he was unable to support them,

R. G. Hyatt, as guardian, took the custody of his infant wards and put them in charge of his mother, Mrs. M. C. Hyatt (paternal grandmother of said infants). The grandmother kept the children at Havoco, in McDowell County, for about six months. About this time the said guardian purchased a home near Blacksburg, Virginia, for his infant wards, paying therefor $1,000.00, $200 of which he paid out of his individual funds, and $800.00 of which he paid out of the guardianship funds. He took the deed in his own name. But before buying he said he had consulted John C. Summers, deputy clerk of the County Court of McDowell County, and an attorney of Christiansburg, Virginia, both of whom advised him that such a course would prevent interference by O. L. Haley, the step-father of his infant wards. He does not say, however, that he made a full disclosure to his advisers of all the circumstances pertaining to his guardianship affairs. After the purchase of the property in Blacksburg, Virginia, the defendant Hyatt took the children to the home he had bought, where the grandmother and four children continued to live for about three years, when the grandmother became ill, and it became necessary for her to break up the home and bring the children back with her to relatives in McDowell County. She died in June, 1923, and the children were kept by their guardian and by members of both of their parents' families, until September, 1923, when the defendant Hyatt took the three younger children to the Odd Fellows Home, their admission into that institution having been arranged for by the defendant Hyatt and his brother, Luther Hyatt. The oldest boy, Obra, remained with his guardian.

R. G. Hyatt testified that he was not a non-resident of this State; that while it is true he had at times worked in Kentucky, he had always retained his legal residence in West Virginia. During the period of nearly four years that the guardian had the care and custody of his infant wards, he claims to have spent more than $3,000 in their maintenance and support. There is a conflict in the evidence as to what extent Hyatt contributed to the support of the children. The evidence that he introduced to support his claim in that regard is very unsatisfactory. He offered in evidence certain checks

.showing expenditures out of his guardianship funds, some of which checks were payable to the grandmother, Mrs. M. C. Hyatt, some were payable to merchants, given to them, according to Hyatt, in payment of merchandise for the children, one check for $800 was in part payment of the property he purchased at Blacksburg allegedly for the benefit of the children, and one check was in payment of certain attorney fees. He presented several purported copies of statements of account from merchants in and near Blacksburg, Virginia, showing supplies purchased by Mrs. M. C. Hyatt during the three-year period in which she kept the infant wards at Blacksburg. The statements of account, amounting to several hundred dollars, were in a rather crude state, and with one or two exceptions, did not show that they had been paid, although defendant Hyatt testified that he had paid them. Most of these accounts had been run in the name of Mrs. M. C. Hyatt, the grandmother. Hyatt claims to have made visits at least every three months to Blacksburg, and states that while there he would pay off debts previously contracted by Mrs. M. C. Hyatt, and would often buy supplies for cash during these visits, and he kept no record of such expenditures. He also bought a cow, a calf and a pig, for $100.00 and a horse for $100.00, which were put on the place at Blacksburg. He later sold the cow. The witness stated that after he had bought the property in Virginia for the benefit of the children, he didn't believe a settlement was necessary.

Rosa Hyatt Haley, the mother of the plaintiffs, and the wife of O. L. Haley, their next friend, testified that to her knowledge R. G. Hyatt has not spent one cent for the support and maintenance of his infant wards since he was appointed their guardian on Nov. 12, 1919; that their relatives had supported them; that she and O. L. Haley, her husband, during the time the children were with their grandmother, had sent $200 to be used for their support and had also sent about $200.00 worth of clothing. She also said that her father, Gus Vincel, O. L. Haley and the Odd Fellows Lodge got the children into the Odd Fellows Home, and that R. G. Hyatt had nothing to do with getting them there. It does not appear from her testimony that she had ever visited the chil-

dren while they were living with their grandmother Hyatt.

G. V. Vencil, the father of Rosa Hyatt Haley, and grandfather of the plaintiffs, testified that after their father's death, he (the grandfather) had helped to support them a part of the time; that he gave them money and clothes; and their other relatives helped them. He also said his son sent them money, as did Mr. Haley and his wife; that the Knights of Pythias Lodge sent $21.00 through him; that the children wrote they didn't have bread to eat and needed clothes. He estimated that he had spent about $75.00 on clothing and food for the children. The witness said that he had received a letter from R. G. Hyatt's mother, saying that in three months defendant Hyatt had given her only three dollars to support these children; that he didn't have the letters above referred to, having turned them over to the Lodge; that as far as he knew R. G. Hyatt had never contributed materially to the support of his wards.

O. L. Haley testified that about a week before he had seen R. G. Hyatt and his ward Orbra Hyatt shooting pool together, and that Orbra was smoking a cigarette. The witness admitted that he smoked cigarettes, shot pool, and used to drink liquor. He said that he didn't want to be appointed guardian of the infant plaintiffs; that he didn't know who he wanted to be appointed; that he had never thought of any one particularily.

Hyatt's statement that he contributed materially to the support of his infant wards while they were living with his mother, is corroborated by Mrs. Bertie Hyatt, the wife of Luther Hyatt, a brother of the defendant. She states that very often the defendant sent money and clothes to his infant wards, and that some of these supplies and money had been sent through her.

Orbra Hyatt, the oldest of the infant wards, a boy of 16 years, testified that his Uncle Grover (his guardian) and his Uncle Luther (his guardian's brother) provided the support and maintenance for him and his brothers from October, 1919 to June, 1923; that his Uncle Grover paid the grocery bills, bought the clothing and furnished the other necessary money for himself and his brothers during this period of time. He

further said that all the clothing his mother Rosa Hyatt Haley, had sent to the grandmother for the benefit of the boys while they were at Blacksburg, was "enough stuff to make some overalls and shirts"; that the only money the mother had spent on the children while they were with their grandmother was when one of his little brothers had been sent by her to Christiansburg. He stated that $10.00 was the total amount sent to his grandmother Hyatt by his grandfather G. V. Vencil. The witness said the first he knew of the institution of this suit was when it came out in the papers; that his step-father was not friendly to him.

John W. Luther, District Deputy Grand Master of the Grand Lodge of Odd Fellows of West Virginia, testified that while Mr. O. L. Haley had first suggested to him that the three infant wards of defendant Hyatt should be placed in the Odd Fellows home, Haley had failed to keep a number of engagements with him; and that Luther Hyatt and R. G. Hyatt came and looked after the matter, and by reason of their aid the final steps necessary to secure the admission of the children into the Home were taken.

The first point of error relied upon by defendants is that the lower court should not have permitted this suit to be prosecuted in the name of O. L. Haley as next friend of the infant plaintiffs. The defendant Hyatt and Orbra Hyatt, one of the plaintiffs, a boy 16 years of age, both objected to O. L. Haley acting as next friend of said children, because he was unfriendly to said infants, and was not a fit and proper person. It is urged that Orbra Hyatt's objection should have been sustained because, being over 14 years of age he would have had a right to select a guardian. The only specific ground of unfitness is the alleged unfriendly feeling displayed by Haley towards his step-children. We do not believe that the circuit court has abused its discretion in holding that O. L. Haley was a proper person to represent the infant plaintiffs. We are unable to perceive that the children were injured in any way by his prosecution of the suit in their behalf. "The duties of a *prochien ami* and his power are comprised within a very narrow compass. He may prosecute a right for an infant, but he can do nothing which can operate

to its injury. He can, it is true, dismiss a suit, because he is himself liable for costs, although even this may be well questioned when injury to the minor would be the result." *Isaac* v. *Boyd,* 5 Port. (Ala.) 393, quoted in *Crotty* v. *Eagle,* 35 W. Va. 151. A next friend is one admitted by the court to prosecute an action for an infant, because otherwise he might be prejudiced by the refusal or neglect of his guardian. He is, in fact, but a species of attorney, who is permitted to act for the infant so far as to conduct his suit. *Crotty* v. *Eagle,* 35 W. Va. 151. A *prochein ami* is not a party to the suit. The infant is the real party. The next friend prosecutes and looks after the suit. His duties and powers end with judgment recovered. He cannot receive payment of the judgment; but payment must be made to the regular guardian or to the court. *Fletcher* v. *Parker,* 53 W. Va. 422.

We now come to the controlling question presented in this case, namely, should R. G. Hyatt, guardian, receive credit for the money expended by him in behalf of his infant wards in furnishing them with the necessities of life during the period of nearly four years they were living with his mother, said money so provided having been in excess of the annual interest on the trust fund, and he not having first obtained permission from the circuit court to so apply the whole or a part of the principal? The answer to this question will settle the remaining points of error relied upon. The plaintiffs contend that he should not receive such credit, because without previous authority, as provided by Section 8, Chapter 82, Code 1923, he would be entitled to no credit for disbursements out of the principal of his wards' estate. The defendants rely upon the case of *Myers* v. *Myers,* 47 W. Va. 487.

The provisions of Section 8, Chap. 82, Code 1923, are free from ambiguity, and in the ordinary case there should be no difficulty in their application. But the case at bar is not an ordinary case. Here four fatherless children were left homeless by reason of their mother's re-marriage within two or three months after their father's death, to a man who refused to let her bring the children into his home. An uncle stepped into the breach, received an appointment as guardian, and placed the children with his mother (their paternal grand-

mother) in whose home they were sheltered and cared for over a period of nearly four years, until the death of the grandmother. The sum of $1303.72, the distributive share of the infant wards as heirs and distributees of their father, was paid into the hands of the guardian who expended the whole or a part of the principal sum, and some of his own money, in providing for the needs of his infant wards as he thought best. Each child's share of this money as distributee amounted to approximately $325.00. The interest on the principal sum of $1,303.72 would amount to less than $80.00 a year, about $20.00 to each child. If the principal were spent over a four-year period, it would allow less than a hundred dollars a year for each ward. Some one had to care for these children. Because of their infancy they were unable to provide themselves with the necessities of life. Under such circumstances the expenditure of the principal sum in caring for the children must have followed as a matter of necessity. It is true that some of the disbursements of the guardian were not for ''necessaries'' in the legal sense of the term; but it is apparent from the record that at least a part of the principal sum of the trust estate was so expended, as was probably a considerable amount of the defendant Hyatt's own money. While the testimony as to who was chiefly responsible for the maintenance and support of these infants during the period of nearly four years they were living with their grandmother, is conflicting, the preponderance of the testimony would seem to establish the fact that defendant Hyatt was the principal source from whence came the necessities furnished his wards during that time. The equities to that extent are in his favor. But we are forced to condemn the slip-shod manner in which he has carried on his guardianship affairs. He has kept no separate account of the amount spent for each ward, as the law ordinarily requires; in fact, he seems to have kept no accounts at all. Then again, his expenditure of the principal sum or a part thereof for things that were not necessaries, without first having obtained the permission of the court, cannot be too strongly condemned. We cannot approve of his purchase of the land near Blacksburg, although he did use the property so purchased to furnish a home for the chil-

dren.  He should have received authority from the court to
make this purchase.  But in spite of all these last named cir-
cumstances, we believe that the equities are in favor of the
defendant, and that this case falls within the doctrine laid
down in *Myers* v. *Myers,* 47 W. Va. 487.

In the *Myers* case this court said: ''Nor does the fact that,
under Section 8, the guardian cannot, in his guardianship
settlements, be allowed his expenditures over and above the
ward's annual income and disbursements authorized by order
of court, destroy the guardian's individual common-law right
to hold his ward liable for necessaries furnished him for the
payment of which there are no funds or estate in his hands
legally liable.  *  *  *  The ward suing the guardian for a
settlement after he reaches his majority, a court of equity
will not require the guardian to establish his claim for neces-
saries at law, but, having jurisdiction for one purpose, will
do complete justice between the parties.''  This court also said
in that opinion: ''This law was never intended, in all of its
strictness, to apply to estates of small or inconsiderable value,
or in cases of emergency or necessity.  If it was, the sooner it
is repealed or modified the better it will be for the children it
was to protect.  It is the duty of a court of chancery, having
jurisdiction of such matters, to so construe it as to make it
operate with justice and equity.  In short, the rules and prin-
ciples of equity must be applied to it''.

In the case of *Campbell* v. *O'Neill,* 69 W. Va. 459, it was
said: ''Notwithstanding this statute, however, a court of
equity may, upon the principles of the Virginia cases cited,
and *Myers* v. *Myers, supra,* where it has the entire matter
before it for settlement, reimburse a guardian out of the prin-
cipal of the ward's personal estate, for disbursements which
the law regards for necessaries.  The general rule, however,
is that where expenditures of this kind have been made with-
out a previous order of the court, some good excuse must be
furnished to the court why application was not made to the
court for authority before doing so.  *Bond* v. *Lockwood,* 33
Ill., 212, 224-5.''

And in the case of *Buskirk* v. *Sanders,* 70 W. Va. 363, this court said: "Appellees contend that without previous authority, as provided by section 8, chapter 82, Code 1906, she would be entitled to no credit for disbursements out of the principal of her wards' estate. We think this not a well founded proposition. The statute we think so far as it relates to disbursements by guardians for necessaries must be construed to be permissive, on the principles of *McClay* v. *Equitable Society, supra,* construing a statute in Mississippi, and as only providing a mode by which the guardian may obtain in advance judicial approval of his act, instead of leaving the question open for dispute at a future day. At common law expenditures made by a guardian in good faith, and for the benefit of the ward, would be confirmed by the court. This rule is recognized in *Myers* v. *Myers,* 47 W. Va. 488, and *Campbell* v. *O'Neill,* 69 W. Va. 459, 72 S. E. 732, 736. * * * Under our decisions expenditures so made without court authority must fall within the rule of necessaries."

We believe that under the facts of this particular case, as now developed, the defendant Hyatt was not guilty of an intentional embezzlement or misappropriation of the funds of his infant wards, and that he should receive credit in settling his affairs as guardian, for so much as he can prove he actually expended as necessaries for the benefit of said infants. The court below in rendering its decree against him for the sum of $1,303.72 did not charge him interest on that amount for the four-year period, thus virtually crediting him with the sum of $300.00, in round numbers. The circuit court evidently took the position that under the statute the defendant Hyatt was not entitled to prove that he had expended an amount in excess of the $300.00 interest, and consequently did not consider his alleged expenditures for necessities beyond that figure. The evidence as to the expenditures for necessities over and above the interest on the guardianship fund is rather unsatisfactory for the statement of an account. But it is apparent that the lower court has not allowed to the guardian all that he is entitled to, and the items of expenditures for necessities and the urgency therefor

are capable of fuller development and proof. Having determined the principle on which the cause should be decided, we will reverse the decree and remand the cause for further proceedings.

It being apparent that the court based that part of its decree relating to the removal of the defendant Hyatt as guardian of the infant plaintiffs and directing O. L. Haley to apply to the County Court to have a guardian appointed in his stead, on the fact that Hyatt' had embezzled or misappropriated the funds of his wards, and as we do not believe the evidence, as now developed, justifies such a finding, we hold that the court erred also in this respect.

The decree will be reversed and the cause remanded and further proceedings had therein, as above set out.

*Decree reversed; remanded.*